UNITED STATES, Appellee

v

JOE DAVID WILLIAMS, Airman Apprentice,
U. S. Navy, Appellant

11 USCMA 459, 29 CMR 275

No. 13,579

Decided May 6, 1960

*Lieutenant Colonel Remmel H. Dudley,* USMC, argued the cause for ·Appellant, Accused.

*Lieutenant Commander M. M. Seydel,* USN, argued the cause for Appellee, United States.

## Opinion of the Court

HOMER FERGUSON, Judge:

Charges were preferred against the accused on August 17, 1959, for an unauthorized absence, in violation of the Uniform Code of Military Justice, Article 86, 10 USC § 886. They were referred for trial to a special court-martial appointed by Appointing Order Serial 7268, dated August 17, 1958. On August 21, 1959, the accused and ten other defendants were brought before the court-martial. All eleven were present during the administration of oaths to court personnel and the convening procedure. Thereafter, ten of the accused were excused and the individual trial of the eleventh commenced. Following its termination in findings of guilty and adjudication of sentence, six of the other accused had their cases separately presented. All were convicted and sentenced. After completion of the seventh case, the trial counsel, following a conference with the Receiving Station Legal Officer, withdrew the remaining four cases, including that of the accused, from consideration by the court-martial on the ground that its sentences in the cases already tried had been consistently too lenient. Affidavits filed by the Government on this appeal indicate that the withdrawal was approved by the convening authority. None of these statements, however, mention *any reason* for such action. Indeed, the convening authority's affidavit pertinently sets forth only the fact that he was informed by

the legal officer that the court-martial had tried seven cases and that permission was requested to withdraw the remaining cases before it. Such permission was granted. The convening authority makes no mention of a letter to him from the accused which set forth the claim that the withdrawal of the charges was predicated upon improper grounds. It is admitted, nonetheless, that all parties were prepared to proceed with accused's case at the time of the withdrawal of charges from the first court-martial.

On August 25, 1959, the accused was arraigned and tried before a special court-martial appointed by Appointing Order Serial 7517, dated August 24, 1959. At the outset of the proceedings, the defense counsel presented in evidence the aforementioned letter, signed by the accused and directed to the convening authority, in which the foregoing matters were set out. The following colloquy then occurred:

"DC: The defense now places a motion before the court to dismiss the charge in this case on the basis of the information contained in Defense Exhibits 'A' through 'C'.

"PRES: The motion is denied.

"DC: At this time the defense requests continuance of trial until final action on Defense Exhibit 'A', the accused's letter requesting dismissal of the charge; until action

on that letter is final on the part of the Commanding Officer.

"PRES: The continuance is denied.

"DC: The defense has no further motions or request for relief to be made at this time."

Thereafter, the accused pleaded guilty. Following findings consonant with that plea, evidence of three previous convictions was received, and he was sentenced to bad-conduct discharge, forfeiture of seventy dollars per month for six months, confinement at hard labor for six months, and reduction to the lowest enlisted grade. The entire trial, from the time the court was called to order until the announcement of sentence, consumed only twenty minutes.

Intermediate appellate authorities affirmed. Inexplicably, neither the staff legal officer's review nor the opinion of the board of review mentioned the problem now confronting us. We granted review on the issues whether the withdrawal of accused's case from the original court-martial and denial of the defense motion for a continuance were prejudicial. Our action on the first question precludes the necessity of discussing the latter proposition.

The Uniform Code of Military Justice makes no mention of the effect of reference of charges for trial by a special court-martial. Code, supra, Article 33, 10 USC § 833, only indirectly discusses the procedure and then merely with respect to the necessity for a pretrial advice in cases tried by general court-martial. The Manual for Courts-Martial, United States, 1951, is more explicit. It provides that reference for trial is had by execution of an indorsement on page 3 of the charge sheet and notes that a new reference is "customarily accomplished by means of a new indorsement affixed to the charge sheet" —a procedure which was not followed in the instant case. Manual, supra, paragraph 33j. More pointedly, it extensively discusses the subject of withdrawal of charges, with respect to such action both after evidence is introduced and its initiation before the commencement of the prosecution's case:

"*b.* **Grounds for withdrawal.**— Proper grounds for the withdrawal of a specification include substantial defect in the specification, insufficiency of available evidence to prove the specification, and the fact that it is proposed to use one of the accused as a witness.

"If evidence on the issue of guilt or innocence has been received after a plea has been entered, a withdrawal of a specification because of a failure of available evidence or witnesses, without any fault of the accused, amounts to jeopardy and constitutes a trial in the sense of Article 44. However, withdrawal of a specification because of manifest necessity in the interest of justice is not a bar to further prosecution. Thus, if urgent and unforeseen military necessity requires that a trial be terminated, and it does not appear that the military situation will permit resumption of the trial within a reasonable time, the withdrawal of a specification will not prevent a later trial for the same offense. Similarly, if inadmissible information, highly prejudicial to either the Government or the accused, has been brought to the attention of the court, and it appears to the convening authority that the members of the court cannot be reasonably expected to remain uninfluenced thereby, he may withdraw the case from that court and refer it to another court. The power to withdraw a case after evidence has been taken on the issue of guilt or innocence will be exercised only with the greatest caution, under urgent circumstances, and for very plain and obvious causes. *A specification will not be withdrawn arbitrarily or unfairly to the accused in any case.*" [Emphasis supplied] [Manual for Courts-Martial, supra, paragraph 56b.]

While we express no opinion on

461

the validity of all the propositions set forth in the foregoing █ extract, particularly those relating to the doctrine of former jeopardy with which we are not now concerned, we are sure it indicates that the drafters of the Manual thought it necessary to restrict withdrawal of charges prior to arraignment to those limited occasions on which good cause existed for that unusual action. Thus, it speaks of the necessity "to use one of the accused as a witness" or of a "substantial defect" in the pleadings. These matters are normally determined prior to the presentation of evidence, and it would be indeed unusual to make reference to such grounds for withdrawal if the authors of these procedural regulations intended the explanation to apply only to removal of counts from the court after it had heard testimony. Moreover, the requirement that good cause be shown for removal of the charges after the court is convened is consonant with the command that specifications not be withdrawn "arbitrarily or unfairly . . . in any case," and accords with our prior characterization of the reference for trial as a judicial act. Manual, supra, paragraph 56b; United States v Bunting, 4 USCMA 84, 15 CMR 84; United States v Roberts, 7 USCMA 322, 22 CMR 112. Finally, we have had occasion to express our disapproval of schemes by which the Government seeks to obtain a hearing before a body partial to its views. United States v Sears, 6 USCMA 661, 20 CMR 377; United States v Whitley, 5 USCMA 786, 19 CMR 82. We are certain the authors of the Manual, supra, in providing for the withdrawal of charges, realized the accused was entitled to a fair hearing before an impartially constituted court and that the Government was not entitled to obtain a new forum simply because the trial counsel was dissatisfied with the results previously obtained. Accordingly, and in view of paragraph 56b of the Manual, supra, we hold that, once a court-martial has been convened to try previously referred charges, they may not be withdrawn

by the convening authority without good cause.

Conceding *arguendo* that the withdrawal in this case was predicated upon the inadequacy of █ previously adjudged sentences, the Government nevertheless urges that good cause for the action is thereby shown, for it was the duty of the convening authority to see that crimes occurring within his command were punished appropriately. The short answer to this argument is the command of Code, supra, Article 37, 10 USC § 837, that no superior authority attempt to supplant the final determination of the court members concerning sentence with his own views. See United States v Littrice, 3 USCMA 487, 13 CMR 43; United States v Estrada, 7 USCMA 635, 23 CMR 99.

We are satisfied that the accused's statement in the record, unrebutted both at the trial and by █ the Government affidavits █ filed here, establishes that the charges against him were withdrawn from the original court-martial because of a fear on the part of legal personnel that it would not adjudge an "adequate sentence." As this is the very antithesis of good cause, it is apparent that the withdrawal was prejudicially erroneous. If the Government believed that the court members were predisposed to leniency, it was entitled to challenge them individually at the appropriate place in the trial. Thus, it was not required to resort to a subterfuge which involved criticism of the member in violation of the mandate of Code, supra, Article 37.

The decision of the board of review is reversed, and the record of trial is returned to The Judge Advocate General of the Navy. A rehearing on the sentence may be ordered.

Chief Judge QUINN concurs.

LATIMER, Judge (dissenting):

I dissent.

The decision of my associates is unsound in at least three respects. First, it should be noted that the

charges were withdrawn before arraignment, and in connection with the withdrawal the majority opinion quotes the provisions of paragraph 56b, Manual for Courts-Martial, United States, 1951—which apply after the taking of testimony has started, after arraignment—when subsection d—applicable before arraignment—should be considered. See also paragraph 37c(1) of the Manual, where, in discussing a similar matter, it is stated that, "Any unarraigned case which is pending before the old court may be withdrawn from it and referred to the new court." A more strict rule after the taking of testimony has commenced is not surprising, for otherwise the Government has an opportunity to save a lost cause. Second, the accused has no right to a particular court-martial prior to arraignment and in this instance he shows no reason for relief. Third, the disposition ordered seems to give to the accused no more than the right to present evidence in mitigation and extenuation to an unbiased court, and that is precisely the same privilege accorded him at the second hearing.

The first aspect of the case needs no comment, and my views on the second will be short. Appellate defense counsel concedes that a convening authority may, prior to arraignment, change the composition and membership of a court or refer a case to a new court. In the case at bar, however, the defense contests the motive for the change. But there is no relevant or competent evidence that the convening authority withdrew the accused's case from the first court-martial because he believed the sentences were not appropriate. There is included in the record a letter signed by the accused which includes this statement:

". . . At the time of adjournment both the President and my appointed Defense Counsel were informed that this curtailment of the day's trials was considered necessary since the sentences adjudged in the cases of those accused already tried were consistently too lenient."

That is the rankest sort of hearsay but, even if we elevate it to the level of evidence, who made the statement and who considered the prior sentences inadequate remains cloaked in secrecy. Notwithstanding, an accused has no privilege to a lenient court-martial any more than a defendant has the right to a merciful jury, and if a convening authority is convinced that the court-martial is not performing its duties properly, he can order it disbanded. If he does, every person being held for trial who had not been arraigned is not entitled to have it reconvened or his subsequent hearing barred. The vice, if any, in a case of this sort is not in denying the accused his trial before the first court but in the possibility that the subsequent court-martial members might be influenced to increase the sentences of those who come before it if they learned that the convening authority was directly or indirectly seeking to influence their actions adversely to the accused. Significantly, there is not the slightest suggestion in this record that the court members who sentenced the accused knew of the prior proceedings, and even defense counsel who had challenged the prior proceedings did not seek on voir dire to ascertain if the members had heard of any act or expression by the convening authority which touched on their freedom to sentence as they willed. Command control, if used as a vehicle for reversal, should in some manner affect the findings or sentence or impair a pretrial privilege of the accused which is reflected in his subsequent conviction or sentence. Accordingly, unless the accused could demand that the court first appointed remain in session until his cause was heard, he has no right or privilege which was impaired. Since time immemorial the convening authority has had the power to withdraw charges prior to trial over the objection of the accused, and if the latter has any legitimate complaint, it cannot be based on a claim that he was denied a court of his choice.

Last, the disposition ordered by the Court shows the futility of this re-

versal. My associates, concluding that the charges against accused "were withdrawn from the original court-martial because of a fear on the part of legal personnel that it would not adjudge an 'adequate sentence,' " hold the withdrawal to be prejudicial error. Inasmuch, however, as their decision leaves accused's conviction affirmed, it is obvious they do not consider the matter jurisdictional. Thus they merely authorize a rehearing on sentence. Manifestly, such rehearing cannot be before the supposedly "lenient" original court. Even assuming it was possible to reconvene that court at this date, nevertheless, implicit in the majority's opinion is a finding that when it convened with accused present and his case properly referred to it for trial, a "hearing" had commenced even though he had not yet been arraigned. Accordingly, the original court members are proscribed by law from sitting on the rehearing. Article 63(b), Uniform Code of Military Justice, 10 USC § 863. It is apparent, therefore, that the proceedings authorized by my brothers must be held before a new court-martial. Yet, as I have pointed out hereinbefore—and my colleagues do not dispute the contention—there is not the slightest indication the court which sentenced accused even knew of the prior proceedings or was in any other way prejudiced against him. Under these circumstances, I encounter difficulty in perceiving in what fashion a rehearing on sentence before a new court will serve to remedy any alleged error pointed out by my associates. Certainly, there is no reason whatever to suspect a third court-martial can better serve fairly and impartially to impose appropriate punishment against accused than did the court that sentenced him.

Further, I wonder just what accused, who this decision seems to benefit, will really gain. The record in this case shows him to be a recidivist absentee who has three prior convictions to be considered by a court in imposing sentence. They involve multiple specifications, and the record shows other delicts. Altogether—and apart from nonjudicial punishment for three unauthorized absences and another offense—accused has been punished by court-martial for five prior violations of Article 86 and four other minor crimes. The offense herein involved is a 79-day absence, obviously not merely a failure to report on time. With that sort of military record, it is easy to understand the sentence adjudged by the court-martial and the action by appellate authorities on review. In fact, I suggest it will be amazing if, upon the rehearing—and the maximum sentence imposable there will be the same as that which could have been levied on the original trial—accused ends up with a better result, for the confinement imposed has already been served, so the only question of moment concerns the punitive discharge. Thus, although it appears on the surface that accused emerges from this appeal a winner, I am constrained to conclude that any victory is indeed hollow for, except for the unlikely contingency that the bad-conduct discharge will be eliminated on rehearing, he will in fact realize little by this reversal.