UNITED STATES, Appellee,

v.

David A. BLAYLOCK, Private, U.S. Army, Appellant.

No. 34,482.
SPCM 12165.

U.S. Court of Military Appeals.

March 28, 1983.

For Appellant: *Colonel Robert B. Clarke, Major Benjamin A. Sims, Captain Demmon F. Canner* (on brief); *Lieutenant Colonel John R. Thornock, Major James F. Nagle.*

For Appellee: *Colonel Thomas H. Davis, Colonel R.R. Boller, Major Michael B. Kennett, Captain Dale L. Anderson* (on brief); *Major Steven M. Werner.*

*Opinion of the Court*

EVERETT, Chief Judge:

A military judge sitting as a special court-martial convicted appellant of unauthorized absence, in violation of Article 86, Uniform Code of Military Justice, 10 U.S.C. § 886. His sentence to a bad-conduct discharge, confinement for 75 days, and forfeiture of $200.00 pay per month for 2 months was approved by the convening authority. In a memorandum opinion the United States Army Court of Military Review approved the findings and the sentence except for the bad-conduct discharge. In turn, we granted review on this issue:

WHETHER THE COURT–MARTIAL WHICH TRIED THE APPELLANT LACKED JURISDICTION TO DO SO IN THAT THE APPELLANT'S CASE HAD PREVIOUSLY BEEN REFERRED TO A COURT WHICH WAS NOT EMPOWERED TO IMPOSE A PUNITIVE DISCHARGE AND THAT REFERRAL WAS NEVER PROPERLY WITHDRAWN.

I

On April 19, 1976, Colonel Richards, the special court-martial convening authority, referred the charges against Blaylock to a special court-martial that was not empowered to adjudge a bad-conduct discharge. On April 30, Major General William W. Palmer, the officer exercising general court-martial jurisdiction over appellant, disapproved his request for an administrative discharge for the good of the service in lieu of court-martial, which had been submitted pursuant to Chapter 10 of Army Regulation 635–200 (December 14, 1973).

In the same action, General Palmer stated that the "case is referred to BCD Special Court-Martial." That same day a new indorsement was affixed to page 3 of the charge sheet to show that by command of General Palmer the charge was referred for trial to a special court-martial appointed by orders dated February 23. The referral instructions were that "[t]he court is empowered to adjudge a bad-conduct discharge." A later indorsement, dated May 13, 1976, stated that the case now was referred by command of General Palmer to a special court-martial appointed by a convening order of February 18—again with instructions that "[t]he court is empowered to adjudged [sic] a bad-conduct discharge." When trial commenced, defense counsel made no effort to contest the court-martial's jurisdiction or to question the manner in which the charge had been referred for trial.

## II

We dealt with a somewhat similar issue in *United States v. Hardy,* 4 M.J. 20 (C.M.A. 1977), where charges had been withdrawn from a special court-martial and then referred for trial by general court-martial. There, we stated that, unless charges are properly referred to a court-martial, it lacks jurisdiction to try those charges. Also, the Court "require[d], for all trials beginning on or after the effective date of this decision, an affirmative showing on the record of the reason for withdrawal and rereferral of any specification." [1]

Since the case at bar preceded *Hardy,* its prospective requirement that the record of trial show affirmatively the reason for withdrawal and rereferral of charges is inapplicable. Moreover, partly for reasons stated in Judge Cook's dissent in *Hardy,* we must reject some of the statements made in that case.

For one thing, *Hardy* concluded that the general court-martial lacked jurisdiction to try charges referred to it by the officer exercising general court-martial jurisdiction because those charges had not been properly withdrawn from the special court-martial by its convening authority. However, Hardy was a person subject to the Uniform Code; the offenses charged were prohibited by the Code; the convening authority was a person empowered by Article 22 of the Code, 10 U.S.C. § 822, to convene a general court-martial; and the court personnel were appointed pursuant to Articles 25–27 of the Code, 10 U.S.C. §§ 825–27. Thus, under familiar criteria the general court-martial in *Hardy* would appear to have possessed jurisdiction.[2]

Apparently the majority reasoned in *Hardy* that, where command influence was exercised in violation of Article 37, UCMJ, 10 U.S.C. § 837, jurisdiction was lacking despite an ostensible compliance with statutory requirements. For such a view, some support may be found in cases which have ruled that "jurisdiction" is lost by a tribunal that has deprived the defendant of important constitutional rights. *See, e.g., United States v. Augenblick,* 393 U.S. 348, 351, 89 S.Ct. 528, 531, 21 L.Ed.2d 537, 542 (1969); *Johnson v. Zerbst,* 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938); *Shapiro v. Unit-*

---

1. *United States v. Hardy,* 4 M.J. 20, 25 (C.M.A. 1977). It probably was never intended for this rule to be applied literally to include the frequent situation in which the same convening authority refers charges to the same kind of court-martial with the same instructions. Instead, from the context of *Hardy,* it would appear that the rule stated there was designed to apply to a rereferral of charges that was more onerous from the accused's standpoint.

2. As stated in paragraph 8 of the Manual for Courts-Martial, United States, 1969 (Revised edition):

The jurisdiction of a court-martial—its power to try and determine a case—and hence the validity of each of its judgments, is conditioned upon the following requisites: That the court was convened by an official empowered to convene it; that the membership of the court was in accordance with the law with respect to number and competency to sit on the court; and that the court was invested by act of Congress with power to try the person and the offense charged.

*Accord,* para. 8, Manual for Courts-Martial, United States, 1951; para. 7, Manual for Courts-Martial, U.S. Army, 1949; para. 7, Manual for Courts-Martial, U.S. Army, 1928.

ed States, 69 F.Supp. 205 (Ct.Cl.1947). However, even in egregious cases of command influence, our Court has refused to hold that the error was "jurisdictional." *United States v. Ferguson,* 5 U.S.C.M.A. 68, 17 C.M.R. 68 (1954).

■ Thus, we must repudiate the comments in *Hardy* that the intervention by the officer exercising general court-martial jurisdiction gave rise to a "jurisdictional" defect. Likewise, in the case at bar, we hold that, since General Palmer, the officer exercising general court-martial jurisdiction, was empowered by Article 23(a)(1), UCMJ, 10 U.S.C. § 823(a)(1), to convene special courts-martial, no "jurisdictional" error existed—even if he violated Article 37.

Nevertheless, if General Palmer exercised prohibited command influence in connection with referring the charge of unauthorized absence for trial, Blaylock is entitled to relief. Our Court has always shown special solicitude for claims of command influence. Thus, in *Ferguson*—while ruling that the court-martial had jurisdiction—consideration was allowed of matters outside the record of trial which showed that the convening authority had exerted command influence on the court members. Similarly, as to issues of "unlawful command influence," the draftsmen of the Military Rules of Evidence created an exception to the usual rule that court members are incompetent to impeach their own findings and sentence. *See* Mil.R.Evid. 606(b).

■ The failure of appellant's defense counsel to contest at trial the manner in which the charges were referred does not preclude appellant from raising this issue on appeal. In view of the policy clearly stated in Article 37, we have never allowed doctrines of waiver to prevent our considering claims of improper command control. *United States v. Hawthorne,* 7 U.S.C.M.A. 293, 299, 22 C.M.R. 83, 89 (1956); *United States v. Ferguson, supra.* Indeed, to invoke waiver would be especially dangerous, since a commander willing to violate statu-

tory prohibitions against command influence might not hesitate to use his powers to dissuade trial defense counsel from even raising the issue. *Cf. United States v. Kitchens,* 12 U.S.C.M.A. 589, 592 n. 3, 31 C.M.R. 175, 178 n. 3 (1961) (allegation of retaliation against defense counsel who raised a command influence issue).

In evaluating appellant's claim of command influence, our starting point is Article 37(a) of the Code, which provides that no one subject to the Code "may attempt to ... by any unauthorized means influence ... the action of any convening, approving, or reviewing authority with respect to his judicial acts." Assuming—without deciding—that a convening authority's decision to refer charges for trial is a "judicial act," we must inquire whether Article 37 precludes a superior commander from overriding the decision of a subordinate convening authority by withdrawing charges from the court-martial to which they already have been referred and rereferring them to a different court-martial. In other words, is such action an "unauthorized means"?

Certainly, there are some disciplinary decisions of a subordinate commander which his superior cannot undo. For example, if the subordinate imposes nonjudicial punishment for an offense that is not "serious," then, under Article 15(f), UCMJ, 10 U.S.C. § 815(f), the superior is precluded from further punitive action.[3] Also, if a convening authority has referred charges to a court-martial for trial and trial has commenced, the former jeopardy guarantees of Article 44, UCMJ, 10 U.S.C. § 844, prevent a superior commander from overturning that decision and referring the charges to another court-martial, which might be empowered to adjudge a harsher sentence.

The Code, however, contains no Article which specifically prohibits a superior commander from directing a convening authority to withdraw charges from a court-martial, so that they may be referred to a

---

3. Of course, if the offense is "serious," the nonjudicial punishment does not bar prosecution. *United States v. Wharton,* 33 C.M.R. 729

(A.F.B.R.), *pet. denied,* 14 U.S.C.M.A. 670, 33 C.M.R. 436 (1963).

different court-martial. Instead, in Articles 22, 23, and 24,[4] which delineate who may convene each kind of court-martial, there is a provision that "in any case" a court-martial may be convened by "superior competent authority . . . if considered desirable by him."[5] This power does not purport to be limited to situations where the subordinate commander has not already referred the charges to a court-martial for trial.

 If we interpret Article 37 as prohibiting an officer exercising general court-martial jurisdiction from intervening when he concludes that charges should be withdrawn from a summary or special court-martial, the resulting situation would be inconsistent with the military command structure, whereunder a superior commander can direct the actions of a subordinate. Indeed, such an interpretation would enable a subordinate commander—the special or summary court-martial convening authority—to deprive his superior of powers expressly granted by Article 22. Moreover, under this construction of Article 37, for all practical purposes, Article 44 would begin to operate against an officer exercising general court-martial jurisdiction whenever a convening authority at a lower echelon initially referred charges for trial. Under the law of war, commanders may be held responsible for failure to control their troops and to maintain discipline. *Cf. In re Yamashita,* 327 U.S. 1, 66 S.Ct. 340, 90 L.Ed. 499 (1946). Therefore, we should hesitate to infer from the general language of Article 37 the existence of such limitations on the commander's power to assure that crimes are referred to tribunals that can mete out adequate punishment.

Under Article 65(c) of the Code, 10 U.S.C. § 865(c)—as implemented by paragraphs 91 *a* and *b* of the Manual for Courts-Martial, United States, 1969 (Revised edition)—records of trial by special and summary courts-martial are transmitted to the officer exer-

cising general court-martial jurisdiction and are reviewed under his auspices. Presumably, one reason for prescribing such a procedure is that typically this commander will have a lawyer on his staff, while special or summary court-martial convening authorities probably will not. We are convinced that, consistent with the "supervisory powers over special and summary courts-martial" which are possessed by an officer exercising general court-martial jurisdiction, *see* para. 94*a* (1), Manual, *supra,* he may intervene to cause the withdrawal and rereferral of charges which in his view should be tried by a different kind of court-martial.

 The charges against appellant were not rereferred to a general court-martial but to a special court-martial empowered to adjudge a bad-conduct discharge. Since General Palmer's authority to convene special courts and refer cases thereto was derived from his power to convene a general court-martial, *see* Article 23(a)(1), and could be exercised "in any case . . . if considered advisable by him," *see* Article 23(b), we believe that the preceding analysis is equally applicable here. Offenses should be referred to the lowest level of court-martial which can adjudge an adequate sentence, *see* paras. 30*g* and 33*h*, Manual, *supra.* Consistent with that premise, it would seem strange to require that General Palmer, as the officer exercising general court-martial jurisdiction, rerefer the charges to a general court-martial as a condition for withdrawing them from the "regular" special court-martial. Instead, pursuant to Article 23(b), he could rerefer the charge to a "BCD special court-martial" if he believed that such a court could adjudge an adequate sentence for the offense charged.

 Paragraph 56*a*, Manual, *supra,* obviously contemplates that charges will be withdrawn by the convening authority who originally referred them for trial. If, however, the officer exercising general court-

---

**4.** Uniform Code of Military Justice, 10 U.S.C. § 824.

**5.** Articles 22 and 24 use the word "desirable," while Article 23 uses the word "advisable."

We do not perceive any intent to make a substantive distinction by use of the slightly different language.

martial jurisdiction is entitled to direct the convening authority to withdraw the charges, it would elevate form over substance to require that he proceed in this manner, rather than himself accomplishing the withdrawal and rereferral by having an appropriate indorsement made on the charge sheet. *See* para. 33*j*(1), Manual, *supra.* Indeed, to condition the power of the officer exercising general court-martial jurisdiction to rerefer the charges upon a withdrawal by the original convening authority would impose an unauthorized limitation upon the power granted by Article 23(b).

■ The Manual directs that "[i]n no event will a specification or case be withdrawn arbitrarily or unfairly to the accused." Para. 56a. Whether a case is withdrawn from a court-martial by the convening authority or whether, as here, the officer exercising general court-martial jurisdiction preempts the original convening authority and withdraws the charge, this Manual prohibition is fully applicable. Indeed, the requirement that there be a "proper reason" for withdrawal and rereferral of charges has been repeatedly affirmed by our Court. *See, e.g., United States v. Jackson,* 1 M.J. 242 (C.M.A.1976).

■ Appellate defense counsel has suggested that, in referring the charge against Blaylock to a special court-martial empowered to adjudge a bad-conduct, General Palmer was retaliating for his submitting a request under Chapter 10 for an administrative discharge in lieu of court-martial. If such vindictiveness were demonstrated, appellant would have a sound basis for complaint. No servicemember can be punished, directly or indirectly, for invoking a procedure specifically authorized by a military regulation. Otherwise, the intent of the regulation would itself be defeated and the regulation would become a trap for those who used it. Indeed, in *United States v.*

*Pinkney,* 22 U.S.C.M.A. 595, 596–97, 48 C.M.R. 219, 220–21 (1974), we expressly pointed out:

> The discharge in lieu of court-martial plays an important, though minor, role in the disposition of criminal offenses in the military service. We do not conceive it to be our function to review the merits of the practice. Nevertheless, when an accused seeks to avail himself of this administrative means to dispose of the criminal charges against him, no harm should come to him as a result of the failure to so resolve the case by administrative discharge rather than criminal trial.

Appellant did not object at trial to the withdrawal and rereferral of the charge and offered no evidence that General Palmer acted "arbitrarily or unfairly to the accused," in violation of paragraph 56a, Manual, *supra.* As it stands, the record of trial is consistent with an innocent explanation of General Palmer's decision. Indeed, when he decided to reject appellant's request for a discharge in lieu of court-martial, he probably concluded that—in light of the offense involved and since Blaylock was not being granted the requested administrative discharge from the Army—the case should be considered by a court-martial empowered to decide whether Blaylock should remain in the Army.[6] Such a decision by the officer exercising general court-martial jurisdiction would not fall in the category of vindictiveness, but instead would only be a logical choice by a commander seeking to retain under his command only those soldiers who could be relied upon to be present and to perform their military duties. In the absence of any showing that General Palmer violated paragraph 56a, Manual, *supra,* appellant is entitled to no relief.

### III

The decision of the United States Army Court of Military Review is affirmed.

Judge COOK concurs.

---

6. The initial decision by Colonel Richards, the special court-martial convening authority, to refer the case to a special court-martial does not necessarily signify that this officer believed Blaylock should be retained in the Army. Instead, he may have planned to discharge appellant administratively and use the court-martial conviction as evidence of unfitness or unsuitability.

FLETCHER, Judge (concurring in the result):

In my opinion, the decision of this Court in *United States v. Hardy,* 4 M.J. 20 (C.M.A. 1977), is not applicable to appellant's case so we need not tamper with that decision. *United States v. Hardy, supra,* indeed was couched in jurisdictional terms, the general idea being that a coerced withdrawal of charges from the level of special court-martial jurisdiction invalidated a subsequent referral of these same charges to the level of general court-martial jurisdiction. Article 37, Uniform Code of Military Justice, 10 U.S.C. § 837. This jurisdictional approach or analysis is inappropriate in the present case for two reasons. First, Colonel Richards, the subordinate convening authority, was not coerced nor does it appear that he even withdrew his original referral of these charges from the special court-martial. Second, both convening authorities referred these charges to the level of special court-martial jurisdiction. Article 19, UCMJ, 10 U.S.C. § 819. Although, Major General Palmer's referral embraces additional procedural mandates which permit the imposition of a bad-conduct discharge at the level of special court-martial jurisdiction, I do not believe that Congress intended this fact to have jurisdictional significance.

Only Congress has the authority to stratify a court system, as it has done in both the civilian federal system and the military federal system. There are two strata of courts in the military federal system: the special courts-martial and the general courts-martial. Jurisdictional features of each are set forth in Articles 18 * and 19 of the Code. Within each of these statutes exist requirements that are mandated for the imposition of certain sentences. These procedural requirements do not change the status of the court-martial.

The granted issue in this case asks whether the special court-martial convened by General Palmer lacked jurisdiction to try and convict appellant. In view of Article 23(b), UCMJ, 10 U.S.C. § 823(b), and the absence of any violation of Article 37 in his referral action, I believe this court-martial had jurisdiction to try appellant.

* Uniform Code of Military Justice, 10 U.S.C. § 818.