UNITED STATES, Appellee,

v.

Jerome C. McKNIGHT, Aviation Structural Mechanic (Structures) Third Class, U.S. Navy, Appellant.

No. 63,269.
NMCM 88–2901.

U.S. Court of Military Appeals.

June 21, 1990.

For Appellant: *Lieutenant (j.g.) Tamara A. Massengale,* JAGC, USNR (argued).

For Appellee: *Lieutenant L. Lynn Jowers,* JAGC, USNR (argued); *Commander Thomas W. Osborne,* JAGC, USN and *Lieutenant Rosalyn D. Calbert,* JAGC, USNR (on brief).

### Opinion of the Court

EVERETT, Chief Judge:

Contrary to his pleas, McKnight was convicted by military judge sitting alone as a general court-martial of violating Articles 92 and 112a of the Uniform Code of Military Justice, 10 USC §§ 892 and 912a, respectively. The sentence adjudged was a dishonorable discharge, confinement for 8 years, total forfeitures, and reduction to pay grade E–1. The convening authority reduced the confinement by 18 months but otherwise approved the sentence. After the Court of Military Review had affirmed the findings and sentence in an unpublished opinion dated August 18, 1989, we granted appellant's petition for review on these issues:

### I

WHETHER THE NAVY–MARINE CORPS COURT OF MILITARY RE-VIEW ERRED IN EXCLUDING 5 DAYS BETWEEN 5 AUGUST 1987 AND 11 AUGUST 1987 FROM THE TIME CHARGEABLE TO THE GOVERNMENT UNDER R.C.M. 707, THEREBY DENYING APPELLANT'S RIGHT TO SPEEDY TRIAL ON SPECIFICATIONS 6 AND 8 OF CHARGE II.

### II (specified)

WHETHER THE CONVENING AUTHORITY ABUSED HIS DISCRETION WHEN HE APPROVED THE FINDINGS OF GUILTY TO CHARGE I AND ITS SPECIFICATION (VIOLATION OF A LAWFUL GENERAL REGULATION BY WRONGFUL POSSESSION OF DRUG PARAPHERNALIA), THOUGH THE STAFF JUDGE ADVOCATE HAD RECOMMENDED THAT HE NOT APPROVE SUCH FINDINGS BECAUSE THE EVIDENCE WAS INSUFFICIENT TO ESTABLISH THE GUILT OF THE ACCUSED AS A MATTER OF LAW.

### III (specified)

WHETHER THE NAVY–MARINE CORPS COURT OF MILITARY RE-VIEW ERRED WHEN IT AFFIRMED THE FINDINGS OF GUILTY TO CHARGE I AND ITS SPECIFICATION (VIOLATION OF A LAWFUL GENERAL REGULATION BY WRONGFUL POSSESSION OF DRUG PARAPHERNALIA).

We decide for the Government on all three issues.

### I

When trial commenced on January 6, 1988, the defense moved to dismiss Charge II and all specifications thereunder. Ultimately, the military judge granted this motion as to those specifications that had originally been preferred in February and March 1987 and then repreferred on July 7, 1987. However, the judge denied the motion as to those specifications which had been initially preferred on July 7; and the

issue before us concerns the correctness of that ruling.

■ According to the chronology agreed upon by the parties at trial, trial counsel had proposed to the defense on July 9 that the Article 32, UCMJ, 10 USC § 832, investigation on all the pending charges be scheduled for July 14; and he noted that the investigating officer would "be available on that day." On July 13, McKnight's civilian defense counsel wrote the investigating officer to this effect:

I understand the military charges against AMS3 Jerome McKnight, formerly dismissed, have been revived and are pending first an Article 32 Hearing. I have conferred with Lt. Hackett about the selection of a mutually convenient date for that hearing. Lt. Hackett is Trial Counsel for the government in this case. I informed him however that the co-pending civilian criminal charges in Circuit Court, St. Mary's County, are set for trial August 5, 1987 and further that Lt. Kirschner, formerly military counsel assisting the defense of Airman McKnight, will be withdrawing due to another military assignment he recently received. In view of these two circumstances I suggested to Lt. Hackett that it might be more prudent to permit the civilian trial to be concluded and the results therein obtained before proceeding with the military charges since the latter conceivably may not be necessary depending upon the outcome in the civilian trial. I told Lt. Hackett also that although I am a former Army JAG officer, I am not familiar with the new Article 32 procedures in the military justice system and in that regard have requested Lt. Kirschner to obtain appointment of a military attorney to assist with the defense. I understand this might take some time to accomplish.

Accordingly, I suggested to Lt. Hackett my intention to respectfully seek deferment of the Article 32 proceedings until after August 5, 1987 and the outcome in the civilian trial and after assignment of new military counsel to assist

the defense. Consequently, please accept this letter as a request for deferment until after August 5, 1987 of the Article 32 hearing. I will be available until August 14th (before starting a two week vacation) and after August 31st for scheduling of that hearing.

The investigating officer replied on July 20, 1987:

Due to the problems inherent in assigning new defense counsel to replace Lieutenant Kirshner, your request is granted. Lieutenant Hackett will act as liaison in establishing a new date for the investigation. I would suggest that August 10 or 11 might be appropriate alternate dates.

Although the defense made no objection to the dates proposed by the investigating officer, no pretrial hearing took place until September 11; and the report of investigation under Article 32 was not completed until October 6. On October 26, the charges were referred to a general court-martial; and on November 12, trial counsel requested November 30 as a trial date. On November 25, McKnight requested a continuance until January 6—when the trial began.

From the 183 days which had elapsed between July 7—when charges had been preferred and notice thereof given to appellant—and the date of trial, the military judge subtracted two periods, which he attributed to the defense. The first was from July 14, 1987, until September 11, 1987—a period of 59 days; and the second from November 30, 1987, until January 6, 1988—37 days. With these days subtracted, the Government was well within the 120 days authorized by RCM 707, Manual for Courts–Martial, United States, 1984.

The Court of Military Review concluded that the Government, rather than the defense, should be charged with the delay from August 11 to September 11. However, even with this increased accountability, the Government was just within the 120–day period.

The defense, on the other hand, claims that the Government was accountable for

any delay during that period after August 5. If this contention is accepted, the period of delay chargeable to the Government is 124 days; the time allowed by RCM 707 for getting to trial was exceeded; and the charges should have been dismissed.

As we construe the request for delay contained in the letter from civilian defense counsel, the Government was being asked to postpone the pretrial hearing until a date between August 6 and August 14; and defense counsel was willing to participate in the hearing at any time during that period. Presumably, defense counsel was suggesting a period of several days when he could appear, rather than some single day, in order to make his request for delay less onerous to the Government and therefore more likely of acceptance. If the investigating officer had responded that the hearing would take place on August 14 and had started the hearing on that day, the Government's accountability for delay would have resumed at that time—rather than as of August 5, the earliest date when the defense counsel had indicated that he would be ready to proceed.

■ In our view, the defense is not entitled to ask that a pretrial hearing under Article 32 be delayed until a certain date and then insist that the Government proceed on that very day. The investigating officer or necessary witnesses may not have been available; or trial counsel may have had court commitments. Defense counsel has no affirmative obligation to move the case to trial. However, when trial or some earlier proceeding is delayed for his convenience or needs, he does have some obligation to cooperate reasonably in rescheduling the proceeding. *See general-*

*ly United States v. Longhofer*, 29 MJ 22 (CMA 1989). The Government may insist on some flexibility in scheduling as a condition for granting a defense request for delay.

However, when the investigating officer suggested that he was available to conduct the pretrial hearing on August 10 and 11—and absent any indication that these dates would not be satisfactory for trial counsel—we see no reason why the Government's accountability should not resume on August 11, as the Court of Military Review held. *See United States v. Burris*, 21 MJ 140, 144 (CMA 1985). *Accord United States v. Longhofer, supra* at 25; *United States v. Cherok*, 22 MJ 438, 439 (CMA 1986).[1] Since the defense was ready to proceed on August 11[2] and the investigating officer was available and since civilian defense counsel asserted without contravention that there was no indication in the record why the Government could not have presented its case at the pretrial hearing on that date, we believe that, from that time forward, the responsibility for pretrial delay again was with the Government.

We realize that the selection of August 11 is dependent on our interpretation of the correspondence between defense counsel and the investigating officer and the absence of other information about causes of delay. Perhaps the correspondence might be susceptible of some other interpretation more favorable to appellant's speedy-trial contentions. However, we see no reason to construe any ambiguity in the correspondence against the Government, because that ambiguity is, at least in part, attributable to defense counsel[3] and also because

1. It might be argued that August 10, rather than the 11th, should be selected as the date on which the clock started to run again. However, to use the earlier date would not affect the result here.

2. Appellate Exhibit XX is a motion filed by this same civilian defense counsel in St. Mary's County, Maryland, Circuit Court, requesting a continuance in the trial in that court from August 5 to September 1987. Conceivably, inasmuch as civilian defense counsel earlier had indicated a desire to continue the Article 32

investigation until sometime after the civilian trial in St. Mary's County, this motion might imply that civilian defense counsel was not ready to proceed with the Article 32 hearing on August 11. However, inexplicably this was not raised or argued at trial, so we decline to speculate on it here.

3. *See generally United States v. Cherok*, 22 MJ 438, 440 (CMA 1986) ("If the defense needed a continuance, it should have been requested on the record and not handled in off-the-record negotiations.")

the adverse consequences to the Government—dismissal of the charges—are so great. We conclude, therefore, that it was proper that the charges of which McKnight was convicted were not dismissed on speedy-trial grounds.

## II

■ In his post-trial recommendation, the district judge advocate advised the convening authority that he was

> not personally convinced that the evidence presented at trial concerning Charge I and the sole specification thereunder (wrongful possession of drug paraphernalia—two homemade marijuana smoking devices) established the accused's guilt to that offense beyond a reasonable doubt. My personal assessment of the evidence presented at trial causes me to believe that possession on the premises where the search was conducted was nonexclusive rather than exclusive.... I therefore recommend that you set aside and dismiss the findings of guilty to Charge I and the sole specification thereunder, and that the confinement portion of the sentence be reduced from 8 years to 7 years. *Of course, these are my personal judgments and not legal objections,* and you are free to follow or not as you in your sole discretion determine in your review of the case.

After considering the district judge advocate's recommendation, the convening authority chose to approve all the findings of guilty, as they had been rendered by the military judge; and he approved the sentence except for reducing the confinement to 6½ years. Appellant now complains that the convening authority was obligated at least to explain the reasons for his refusal to accept the recommendation of his district judge advocate.

It seems clear from the language employed that the district judge advocate was giving his personal evaluation of the evidence pertinent to Charge I and its specifi-

cation, rather than seeking to advise the convening authority as to the legal sufficiency of the Government's evidence. However, even if the district judge advocate had intended to express a legal opinion that the Government's evidence was insufficient, the convening authority was free to disregard that opinion—even without stating his reasons for doing so.

Prior to enactment of the Military Justice Act of 1983 [4]—which, among other things, sought to streamline military appellate review procedures—a staff judge advocate was required to prepare an extensive legal review in cases where a punitive discharge or extensive confinement had been adjudged. If the convening authority refused to accept the legal advice of the staff judge advocate, he was required to give his reasons for doing so.

However, under the 1983 legislation, as implemented by the 1984 Manual for Courts-Martial, the staff judge advocate need not prepare any legal review, *see generally* Art. 60(d), UCMJ, 10 USC § 860(d) (requiring only a recommendation of the staff judge advocate); and the convening authority's role is limited to clemency, *see* Art. 60(c)(1) and (3); H. Rep. No. 549, 98th Cong., 1st Sess. 18–19 (1983); S.Rep. No. 53, 98th Cong., 1st Sess. 19–20 (1983); U.S. Code Cong. & Admin.News 1983, pp. 2177, 2183, 2184. *See also* RCM 1106 and 1107, Manual, *supra.* The premise is that significant legal error ultimately can be corrected by the Court of Military Review or, if not there, by a petition for review to this Court.

Consistent with the new statutory provisions, we are convinced that the convening authority was free to act as he did; and the real question is whether the evidence in support of Charge I is legally sufficient. We now turn to consideration of that matter.

## III

■ This Court has no factfinding powers in reviewing the sufficiency of evidence

---

4. Pub.L. No. 98–209, § 5(a)(1), 97 Stat. 1393, 1396–97 (1983).

to support a conviction. *See* Art. 67(d), UCMJ, 10 USC § 867(d). Our role is only to decide whether we "can legally sustain findings of guilty entered by a court-martial and affirmed by a Court of Military Review." *United States v. Seger*, 25 MJ 420 (CMA 1988); *United States v. Carter*, 24 MJ 280, 281 (CMA 1987); *United States v. Harper*, 22 MJ 157, 161 (CMA 1986). *See also* Art. 67(d).

The Government's theory of guilt was that appellant had violated a regulation by his possession of drug paraphernalia—a metal pipe and plastic tape pipe. For these purposes, it was necessary for the Government to show only that McKnight was in a position to exercise control over these items, either directly or through others. *United States v. Wilson*, 7 MJ 290 (CMA 1979). Two or more persons may have possession of the same item, *United States v. Aloyian*, 16 USCMA 333, 36 CMR 489 (1966); and possession of contraband may be established by circumstantial evidence. *See United States v. Wilson, supra* at 293.

The testimony of several law-enforcement officers established that the marijuana pipes were found in McKnight's house in his bedroom when a search warrant was executed. During the same search, other items were discovered—such as drugs, money, and personal papers belonging to McKnight—which confirmed that he resided in the house and had control over it. His name was on the mailbox at the house; and even though another name, "Amadio," also was on the mailbox, this fact does not negate his control over the house.

Under these circumstances, we conclude that appellant's possession was adequately established as a matter of law, so the findings of guilty should be affirmed.

IV

The decision of the United States Navy–Marine Corps Court of Military Review is affirmed.

Judges COX and SULLIVAN concur.