UNITED STATES

v.

**John L. KOKE, 353 68 9228, Lance Corporal (E–3), U.S. Marine Corps.**

**NMCM 89 4087.**

U.S. Navy–Marine Corps Court of Military Review.

Sentence Adjudged 9 Feb. 1989.

Decided 29 March 1991.

Jonathan P. Tomes, Esq., Civilian Defense Counsel.

LT Debra R. Sandifer, JAGC, USNR, Appellate Defense Counsel.

LT Kirk A. Ludwig, JAGC, USNR, Appellate Government Counsel.

Before MITCHELL, FREYER and HOLDER, JJ.

MITCHELL, Senior Judge:

Before this court in the normal course of review, appellant asserts, *inter alia*, that the convening authority improperly withdrew from a prior general court-martial the involuntary manslaughter charge of which he stands convicted. We agree but, finding no prejudice, we affirm.

Appellant was first arraigned at a general court-martial on 23 January 1989 in Korea for fatally shooting another Marine on 24 October 1988 (Charge I) and for pointing a loaded rifle at a Korean Air Force private on three occasions between 18 and 21 October 1988 (Charge II). At the time of the offenses, the accused was on guard duty.

Following arraignment, but before court assembly, at an Article 39(a) session, the military judge granted a defense motion to reopen the Article 32 investigation of the aggravated assault charge. When asked by trial counsel to examine the Article 32 transcript for evidence *aliunde* the unsworn statements at issue which supported the aggravated assault charge, the military judge also found sufficient victim identity confusion in the existing pretrial investigation to suggest that such evidence not only did not support the referred charge, but also probably showed yet another contemporaneous aggravated assault incident different from the one addressed in the charge sheet.

Trial counsel asked to contact the convening authority before proceeding further. The military judge said that unless there was a withdrawal, he was strongly inclined to grant an expected defense severance motion in the interest of judicial economy. Defense counsel unsuccessfully objected to the recess.

Later, trial counsel announced that the convening authority had orally withdrawn all charges and would rerefer them at a later time. The court-martial adjourned. On 25 January 1989, the commander confirmed the oral withdrawal in writing. The letter said merely that after a briefing on the various rulings by the trial judge, he had ordered the Article 32 investigation reopened on all charges.

Following the new Article 32 investigation at which the previous investigation of the manslaughter charge was summarily blessed by the investigating officer, the convening authority rereferred both charges and referred the Additional Charge (pointing a rifle at an unknown Korean gate sentry on 20 October 1988).

At trial on 6 February 1989, a new trial judge granted unrelated motions to dismiss both aggravated assault charges. Therefore, the appellant faced only the involuntary manslaughter charge on which he had been arraigned on 23 January.

Civilian counsel moved to dismiss the charge for want of a proper withdrawal. He asserted, *inter alia*, that there was nothing in the personnel, financial, logistics or military operational aspects of this case that was not present whether there were

one or two trials. All trial personnel were gathered in Korea on 23 January 1989, when the Article 39(a) session convened, and a second gathering was required for the second arraignment and trial on 6 February 1989. The same situation would have existed had there been two separate trials. The discernible, albeit speculative, advantages to the prosecution of a single trial were (1) that the risk of not admitting evidence of the aggravated assaults under Mil.R.Evid. 404(b) on the manslaughter charge would be minimized and (2) a chance that the presence of the aggravated assaults and their much higher maximum permissible sentence would result in a heavier overall punishment package when combined with the more lightly punished but much more emotionally charged manslaughter offense (sentence spiking). He also asserted that live testimony of the accused's parents was lost and that the appellant was denied a speedy trial.

The trial counsel, through reply and supported by the pretrial advice and record documents, argued that the convening authority was merely following the R.C.M. 307(c)(4), 401(c), 601(e)(2) permissive procedural policy of referring all known charges to a single trial. Albeit separate, the offenses occurred about the same time, place, and circumstance in Korea and were witnessed by Korean citizens, so that the case had to be tried in Korea; all court personnel had to go to Korea; there was a financial and logistics tail to the distant trial, though no specific complications were mentioned; and that the understanding necessary to square away the aggravated assault charges did not arise until the Article 39(a) session on 23 January.

We note that the convening authority fairly knew at withdrawal that after the new Article 32, the case would return to general court-martial. At rereferral he also accepted as complete the second Article 32 investigation that did not involve a bona fide second inquiry into the basis or gravity of the manslaughter offense.

The military judge ruled for the Government, finding that the convening authority acted in good faith pursuit of the joinder policy and that the trial counsel's offer to factually stipulate to the appellant's parents' expected character testimony eliminated any potential harm from the parents' untimely trip to Korea. The judge concluded that the procedure was proper and that appellant suffered no unfair prejudice.

The speculative advantages to the prosecution raised by appellant are problematic and more of a potential effect rather than a cause of the withdrawal. However, whether the withdrawal arises from a consistent misunderstanding of R.C.M. 604 or was driven by the perceived prosecutorial advantages, our disposition is the same.

R.C.M. 604 governs withdrawal of charges from a court-martial. It states:

(a) *Withdrawal.* The convening authority or a superior authority may for any reason cause any charges or specifications to be withdrawn from a court-martial at any time before findings are announced.

(b) *Referral of withdrawn charges.* Charges which have been withdrawn from a court-martial may be referred to another court-martial unless the withdrawal was for an improper reason. Charges withdrawn after the introduction of evidence on the general issue of guilt may be referred to another court-martial only if the withdrawal was necessitated by urgent and unforeseen military necessity.

R.C.M. 604 is generally a restatement of the law on withdrawal as it existed prior to 1984. It parallels Fed.R.Crim.P. 48(a) which has a leave of court requirement for *nolle prosequi* that controls dismissals without prejudice. *See* App. 21, R.C.M. 604, MCM. Under R.C.M. 604, the convening authority, without leave of court, has broad authority to withdraw charges from a court-martial. The purpose of R.C.M. 604(b), as with the Federal rule, is to check potential unfair manipulation of the charging and dismissal processes to gain unfair advantage over an accused, to prevent prosecutorial harassment, and to prevent retaliation against the accused for exercising a right. *United States v. Hardy*, 4 M.J. 20 (C.M.A.1977). *See* App. 21, R.C.M.

604(a), MCM. *See generally, Wright, Federal Practice and Procedure,* Criminal 2d, Section 811; *United States v. Cowan,* 524 F.2d 504, 513 (5th Cir.1975), *cert. denied,* 425 U.S. 971, 96 S.Ct. 2168, 48 L.Ed.2d 795 (1976). Generally, this sort of procedure is to be used in the public interest and in the interest of justice. *See United States v. Greater Blouse & Neckwear Con. Ass'n,* 228 F.Supp. 483, 486 (D.C.N.Y.1964).

■ A convening authority may rerefer charges following withdrawal only where there was good cause for the withdrawal. *United States v. Williams,* 11 U.S.C.M.A. 459, 29 C.M.R. 275 (1960). *See also, United States v. Charette,* 15 M.J. 197 (C.M.A. 1983); *United States v. Blaylock,* 15 M.J. 190 (C.M.A.1983); *United States v. Hardy,* 4 M.J. 20 (C.M.A.1977). *United States v. Jackson,* 1 M.J. 242 (C.M.A.1976); *United States v. Walsh,* 22 U.S.C.M.A. 509, 47 C.M.R. 926 (1973); *Petty v. Convening Authority,* 20 U.S.C.M.A. 438, 43 C.M.R. 278 (1971); *United States v. Lord,* 13 U.S.C. M.A. 78, 32 C.M.R. 78 (1962); *United States v. Wells,* 9 U.S.C.M.A. 509, 26 C.M.R. 289 (1958). In no event may a withdrawal be arbitrary or unfair to the accused. *Williams,* 11 U.S.C.M.A. at 462, 29 C.M.R. at 278. *See* R.C.M. 604, Discussion.

■ The principle driving the good cause requirement is that once the convening authority commits a case to a court-martial, he should not thereafter interfere with the judicial process until the case is properly returned to him for review. *Walsh; United States v. Fleming,* 18 U.S.C.M.A. 524, 529, 40 C.M.R. 236, 241 (1960); *Williams.* Thus are the Codal powers of the convening authority and judiciary reconciled and the purpose of R.C.M. 604(b) served. Since a mere withdrawal coupled with dismissal terminates a case, there is no violence to the principle in liberal withdrawal before findings. Such is not true where the case is to live on.

The stage of the trial at which withdrawal occurs is important. *Williams.* After receipt of evidence, R.C.M. 604(b) severely limits withdrawal and rereferral, as many otherwise good reasons for a withdrawal fail the strict test of that portion of the rule. *See Wade v. Hunter,* 336 U.S. 684, 69 S.Ct. 834, 93 L.Ed. 974 (1949); *United States v. Richardson,* 21 U.S.C.M.A. 54, 44 C.M.R. 108 (1971).

■ After arraignment, but before jeopardy attaches, a case may be withdrawn if the accused fails to honor the terms of a pretrial agreement (R.C.M. 705; *Fleming*); if the convening authority receives additional charges and a higher level of court-martial or more severe referral instructions are contemplated (*Wells*); if the reporter notes of previous court sessions are lost (*United States v. Hill,* 45 C.M.R. 904 (N.C. M.R.1972)); or if the court has been challenged below quorum (*United States v. Smiley,* 17 M.J. 790 (A.F.C.M.R.1983)).

■ Prior to arraignment, the receipt of additional charges (*see Wells*), the need to use one co-accused as a witness against the other, the absence of the accused, reconsideration by the convening or higher authority of the gravity of the charges (*Charette; Blaylock*), the resolution of questions concerning mental capacity (R.C.M. 706; *Lozinski v. Wetherill,* 21 U.S.C.M.A. 52, 44 C.M.R. 106 (1971)); the unauthorized absence of an essential witness (*United States v. Gettz,* 49 C.M.R. 82 (N.C.M.R. 1974)), and the routine rotation of court personnel are among the reasons that may constitute good cause for withdrawal. *Williams,* 11 U.S.C.M.A. at 462, 29 C.M.R. at 278. *See* R.C.M. 604, Discussion.

■ It follows that good cause in the context of R.C.M. 604(b) is a sliding standard that becomes more difficult as the stages of trial progress. A finding of good cause is more likely, therefore, where the reason for withdrawal is driven by some event that undermines the appropriateness of being at the stage of the proceedings at which withdrawal occurs.

Because the decision to withdraw and rerefer is a discretionary act and R.C.M. 604 incorporates fairness, there is implicit balancing of the interests of the accused and the Government. *See Fleming* (where withdrawal to transfer the accused to his parent command after his surprise not

guilty plea was not manipulative, but the witness economy reasons of the convening authority were factually incorrect and the action perceived to be a hardship to the accused. Consequently, good motives of the convening authority are not controlling).

■ Improper withdrawal includes any interference with the free exercise of a constitutional or codal right or with the impartiality of a court-martial. *Williams.* Manipulating members to "adjust" court sentences (*Williams; Walsh*), retaliation for defense requested witnesses (*Petty*), and changing venue to avoid witness expenses (*Fleming*) are among improper reasons for withdrawal. The mere consequential effect of an accused being exposed to potentially more severe punishment, however, is not conclusive of an improper reason. *Hardy,* 4 M.J. at 27 (Cook J., dissenting). *Cf. Lord,* at 13 U.S.C.M.A. at 81; 32 C.M.R. at 81; *Wells.*

The charge joinder policy of R.C.M. 601(e)(2), upon which the convening authority purported to rely, is, by its terms, permissive, not absolute. *United States v. Thomas,* 17 U.S.C.M.A. 22, 37 C.M.R. 286 (1967). The policy is normally applicable at the referral stage of a case. It follows that the strength of the policy weakens as the case moves into subsequent stages where other policies and considerations are brought to bear.

■ While two or more charges may be referred to the same court-martial regardless of relative seriousness or relationship, additional charges may be joined for a single trial at any time *before arraignment* if all procedural requirements concerning the additional charges have been met. After arraignment, the accused must consent to the addition of new charges. R.C.M. 601(e)(2). *United States v. Davis,* 11 U.S. C.M.A. 407, 29 C.M.R. 223 (1960); *United States v. Lee,* 14 M.J. 983 (N.M.C.M.R. 1982). This rule creates a certain stability to the trial process and firms the matters against which an accused must defend.

■ As to joinder of new charges, R.C.M. 601(e)(2), 603 and 604 logically complement each other. Read in tandem they each have life. R.C.M. 102(b). Arraignment cuts off the addition of new charges over the accused's objection (*Davis*), absent good cause, *e.g.,* the arising of a significant new charge coupled with a referral of all offenses to a higher level of court-martial (Wells). R.C.M. 604 should not permit by indirection that which is directly prohibited under R.C.M. 601(e)(2) or 603. Consequently, a higher standard than mere adherence to a permissive joinder policy is required to justify withdrawal after arraignment with a view toward rereferral.

■ We distill from the cases several factors that are important indicia of whether a withdrawal after arraignment is for a proper reason in terms of rereferral under R.C.M. 604(b). Among these are the procedure:

(1) is undertaken for an articulable reason that genuinely serves a public interest, or the interests of justice or is reactive to an operational exigency;

(2) arises because of, or relates to, some event occurring after arraignment that actually raises a substantial question concerning the appropriateness of the original referral decision;

(3) is not based on retribution for the assertion of a right by an accused;

(4) does not involve harassment of the accused;

(5) is not arbitrary or unfair to an accused, considering all of the facts and circumstances of a case and bearing in mind that the mere exposure to potential additional punishment is not controlling; and

(6) is invoked in response to an operational exigency.

For example, in the case *sub judice,* had the evidence showed that the convening authority had seized upon the deficiencies in the first Article 32 investigation, lost confidence in the report, and had decided to reconsider his decisions on all charges after a better investigation had been done, we have no doubt that a withdrawal would have been for good cause. This record, however, does not admit any such purpose.

Where a rereferral is more onerous to an accused, the convening authority must make an affirmative showing on the record of the reasons precipitating that action. *Hardy*, 4 M.J. at 25. A rereferral is more onerous when the rereferral is to a higher forum or under more severe instructions than the first referral. *Hardy; Blaylock*, 15 M.J. at 192 n. 1. The better practice, especially for withdrawals after arraignment, is to attach to the record a detailed explanation of the reasons for withdrawal in any case. *See Hardy*. The convening authority's letter in this case did not precisely detail why he decided that the economy embodied in the joinder policy justified withdrawal. Unfortunately any relevant economy or other bona fide reason in this case is far from self-explanatory, as defense counsel rightly noted.

When measured in best light for the convening authority, the withdrawal in this case was error. *Fleming*. The convening authority, in effect, merely added a charge after arraignment. There was no discernible public interest to be served by so doing. There was nothing that occurred after arraignment that raised a substantial question concerning the appropriateness of the original referral of the manslaughter offense. The appellant lost the opportunity, absent a legal right, to have his parents testify on sentencing. If the convening authority's stated policy reason fails, then the manipulative reasons suggested by the trial defense counsel, if true, are clearly improper. Accordingly, under either interpretation of the facts, we hold that the withdrawal of Charge I (manslaughter) was not done for a proper reason within the meaning of R.C.M. 604(b).

Referral errors are not, however, jurisdictional. They are assessed for prejudice. *Blaylock; Davis*. None of the claims of prejudice have merit. Some deserve comment. The issues of sentence spiking and uncharged misconduct did not materialize because of the military judge's dismissal of the aggravated assaults and his ruling that excluded evidence of those offenses when offered under Mil.R.Evid. 404(b). There is no serious speedy trial issue in this case. The delay in following the chosen tactic in this case was less than three weeks and the trial occurred within the limits of R.C.M. 707.

The appellant had no right to the presence of mother and father to testify as character witnesses on sentencing. *See United States v. Combs*, 20 M.J. 441, 442 (C.M.A.1985). The stipulation of fact used in lieu of the personal appearance of the two obviously interested witnesses was an adequate substitute. While the delay in trial rendered wasteful the parents' trip to the Far East and may have shown a certain insensitivity toward them, it does not amount to legal prejudice. The added financial burden to the accused was inevitable without regard to the course chosen by the convening authority. Given the gravity of the manslaughter and aggravated assault charges, had there been two trials vice one, the financial impact on the appellant and his family for legal counsel and trips to the Far East would have been the same.

Consequently, we find that while the convening authority erred in withdrawing Charges I and II from the first court-martial, the appellant was not thereby prejudiced.

Appellant also complains that the staff judge advocate and the convening authority were disqualified from initial review of this case, since post-trial submissions by appellant challenged their decisions on the referral matter. The short answer for the staff judge advocate is that the individual who served as staff judge advocate on review was not the same person who acted on the withdrawal. We discern no reasonable basis for attributing to the convening authority a personal involvement or interest other than official in this case. *See United States v. Conn*, 6 M.J. 351, 354 (C.M.A. 1979). Moreover, the convening authority may correct legal errors in his action but is not required to do so, that function now systemically residing in the appellate courts. *See United States v. McKnight*, 30 M.J. 205, 209 (C.M.A.1990).

The remaining assertions of error regarding the review process and the other assertions of error do not warrant comment.

The appellant received approved punishment of a dishonorable discharge, one year confinement, forfeiture of all pay and allowances and reduction to pay grade E–1. We find that the approved sentence is appropriate for the taking of human life in the circumstances of this case.

Judge HOLDER concurs.

Judge FREYER (Recused).