UNITED STATES, Appellee

v

CHARLES FLEMING, Private, U. S. Marine Corps, Appellant

18 USCMA 524, 40 CMR 236

No. 21,861

August 22, 1969

*Captain John J. Ruprecht*, USMCR, argued the cause for Appellant, Accused. With him on the brief was *Lieutenant Stephen W. Grafman*, JAGC, USNR.

*Captain Lester G. Fant, III*, USMCR, argued the cause for Appellee, United States. With him on the brief were *Colonel C. R. Larouche*, USMC, and *Captain William S. Foss*, USMCR.

## Opinion of the Court

FERGUSON, Judge:

Following his plea of guilty to a charge of desertion, with intent to shirk important service, at a rehearing before a general court-martial, convened at Camp Pendleton, California, on February 21, 1968, the accused was sentenced to a bad-conduct discharge, total forfeitures, and confinement at hard labor for one year. Pursuant to a pretrial agreement, the convening authority, while he approved the sentence, suspended execution of all portions thereof for fifteen months, with provision for automatic remission. He also credited the accused with his pretrial confinement of some five months. Inasmuch as the accused, while testifying in mitigation and extenuation, expressed a desire to serve in Vietnam, the convening authority ordered the accused restored to duty as of the date of his court-martial. On or about March 21, 1968, the accused was transferred for duty in Vietnam. A board of review, with one member dissenting, affirmed the findings and sentence. We granted review on the sole issue of whether the general court-martial, convened at Camp Pendleton, California, had jurisdiction to conduct a rehearing in this case.

The accused's original conviction, at Camp Pendleton, for the same offense was reversed by the board of review. That body found prejudicial error in the fact that the law officer conducted a simultaneous interrogation of several accused as to the providency of their pleas and, in addition, it was found that he did not instruct the court

525

directly but did so by reference to instructions given the same court in prior cases. The board directed that a rehearing could be ordered. At the time of the board's decision, the accused was confined at the U. S. Naval Disciplinary Command, Portsmouth, New Hampshire.

Pursuant to the direction of the board of review, the Judge Advocate General of the Navy referred the case to the convening authority for action. The latter forwarded the record of trial to the Commandant, First Naval District, Boston, Massachusetts, with the following comment:

"Subject to the exercise of your independent judgment, my determination as required by law, based upon the information presently available, is that a rehearing is both practicable and appropriate."

The Commandant, First Naval District, referred the matter to trial by a general court-martial appointed by his order.

Trial of the accused at the First Naval District proceeded through the swearing of the court, a statement of the general nature of the charges, the challenging proceeding, and presentation of the charge and specifications to the court. A reading of the charges was waived. Trial counsel then inquired of the accused how he would plead. Defense counsel requested an out-of-court hearing at which it was divulged that the accused intended to plead guilty. In inquiring into the providency of the plea, the law officer ultimately asked the accused if he was pleading guilty because he was in fact guilty. When he hesitated, the law officer repeated the question and received an affirmative reply. Defense counsel then asked permission to confer with his client. Upon completion of this conference, the following colloquy took place:

"LAW OFFICER: I will not accept the pleas if the accused has any reservation whatsoever about his guilt and he apparently was hesitating here when I asked these questions.

"DEFENSE COUNSEL: Mr. Law Officer, if I might make a statement to you concerning the matter we just discussed.

"LAW OFFICER: All right.

"DEFENSE COUNSEL: When this case first came up we discussed it at great length about the desertion and the elements included in this charge of desertion. I was particularly concerned about the fact that he was only absent for a period of 10 days—well, actually, 14 days, I believe it was—and I discussed this at great length with the accused whether or not he considered he had actually deserted during this period of absence. At the earlier time he felt that he did not actually desert—his only hesitancy in not pleading not guilty was the fact that he would be returned to Camp Pendleton for the rehearing if in fact he did plead not guilty—because of the situation being what it is. I think it is for this reason only that the accused is not willing to plead not guilty.

"LAW OFFICER: I think I understand your point.

"DEFENSE COUNSEL: The only reason he doesn't want to plead not guilty is because he does not want to go back to Camp Pendleton for the retrial of his case.

"LAW OFFICER: But, if he pleads not guilty now, he could be tried here. But, I can't guarantee what anybody might do beyond my powers.

"DEFENSE COUNSEL: Yes, sir.

"LAW OFFICER: In any event, if that is his reason, I will not accept the guilty plea.

"DEFENSE COUNSEL: Yes, sir. But, that's his reason.

"LAW OFFICER: All right. I will not accept the guilty plea. Is there anything else to be brought before me at this point?

"DEFENSE COUNSEL: Not in view of your nonacceptance of the plea.

"TRIAL COUNSEL: I would like to ask for a recess of this out-of-court hearing.

"LAW OFFICER: All right. We will recess the out-of-court hearing —how much time do you need?

"TRIAL COUNSEL: About 15 minutes.

"LAW OFFICER: All right. We will recess for 15 minutes. Now, we are going to run into difficulties here in reconvening. Perhaps if we run too long—if you let me know when you are ready to go. . .

"TRIAL COUNSEL: I will come right back.

"(The out-of-court hearing recessed at 1132, 4 January 1967 [sic].)

"(The out-of-court hearing was reopened at 1140, 4 January 1967 [sic].)

"LAW OFFICER: The out-of-court hearing is reconvened with persons present the same parties as previously named.

"TRIAL COUNSEL: At this time the Government would move for a continuance as it is not prepared to go forward on the merits of the case at this time, having felt before that a guilty plea would be entered.

"LAW OFFICER: All right. The continuance is granted. Any objection by defense?

"DEFENSE COUNSEL: No objections at all.

"LAW OFFICER: How long a period of time do you want the case to be continued?

"TRIAL COUNSEL: I would say at least two weeks time.

"LAW OFFICER: Any objection to that?

"DEFENSE COUNSEL: No, sir.

"LAW OFFICER: All right, then. Today is the 4th and I think we should set a date , . .

"TRIAL COUNSEL: About the 18th of January?

"LAW OFFICER: 18 January —tentative?

"DEFENSE COUNSEL: That's satisfactory with us.

"LAW OFFICER: All right. The case is continued until 18 January. I take it then, at 1230, you will be prepared to continue with another case?

"DEFENSE COUNSEL: Yes, sir.

"LAW OFFICER: All right, then. This case is continued."

In the interim, on January 9, 1968, the Commandant, First Naval District, upon advice of his staff legal officer, withdrew the case from the court. His action therein is as follows:

"In the foregoing case of Private Charles FLEMING, 2309577, U. S. Marine Corps, it appearing that, after the accused, through his counsel, had assured the trial counsel that a guilty plea would be entered—thus forming the basis for referring the case to trial—the law officer, after interrogating the accused in closed session, announced that he would not accept the proferred guilty plea, and it further appearing that the evidence necessary to establish the offense charged is not available locally but is available at the situs of the original trial, and it also appearing that the accused was not arraigned, the specification and the charge under which it is laid are withdrawn from the court-martial to which they were referred, and the entire record is returned to the Commanding General, Marine Corps Base, Camp Pendleton, California for consideration and appropriate disposition."

Appellate defense counsel contend that the order withdrawing the charge from the court-martial convened at the First Naval District contained no showing of good cause and thus all action taken pursuant to the order was invalid.

At the outset, it is noted that both staff legal officers, First Naval District and Camp Pendleton, each advised their respective commanders that the accused had not been arraigned at the proceedings in Boston. This was error. United States v Boehm, 17 USCMA 530, 38 CMR 328. Arraignment is complete when, as in this case, the charges have been read or a reading thereof waived and the accused has been called upon to plead. The pleas, however, are not part of the arraignment. Paragraph 65a, Manual for Courts-Martial, United States, 1951; United States v Boehm, supra; United States v Robinson, 13 USCMA 674, 33 CMR 206. Arraignment is not to be confused with jeopardy, for the latter attaches only after some evidence on the general issue has been introduced. Paragraph 68d, Manual, supra. But that issue is not before us for no evidence was taken before the court convened at Boston.

We are concerned, however, with the action of the convening authority in withdrawing this case from the court after arraignment. Paragraph 56b, Manual, supra. As we said in United States v Williams, 11 USCMA 459, 462, 29 CMR 275:

". . . [W]e hold that, once a court-martial has been convened to try previously referred charges, they may not be withdrawn by the convening authority *without good cause.*" [Emphasis supplied.]

Was *good cause* demonstrated in this case? We think not.

Both the record of the partial trial at Boston and the record of the subsequent proceedings at Camp Pendleton are silent in this regard. The Commandant, First Naval District, in his action, stated that his basis for initially referring the case to trial was the accused's assurance that he would plead guilty. When the law officer refused to accept the plea, the Commandant withdrew the case because "the evidence necessary to establish the offense charged is not available locally but is available at the situs of the original trial." As noted above, he took his action in the mistaken belief that the accused had not been arraigned.

Paragraph 56b, Manual, supra, provides, in pertinent part:

"Proper grounds for the withdrawal of a specification include substantial defect in the specification, *insufficiency of available evidence to prove the specification,* and the fact that it is proposed to use one of the accused as a witness." [Emphasis supplied.]

Since no Article 32 investigation was conducted in this case, the accused having waived this right at the time of his original trial, a determination as to the *insufficiency of available evidence* is exceedingly difficult if not impossible to determine. A stipulation of facts utilized for both Camp Pendleton trials, reflect the following:

"1. On 27 January 1967, Private FLEMING, while a member of Headquarters and Service Company, First Infantry Training Regiment, Marine Corps Base, Camp Lejeune, North Carolina, received orders to report to the Commanding General, Marine Corps Base, Camp Pendleton, California for further processing to the Fleet Marine Force Pacific, Western Pacific Ground Forces.

"2. The accused was directed to report to Camp Pendleton by 2400 12 February 1967. The accused failed to report as ordered and was absent without authority from 13 February 1967 until 28 February 1967 when he was apprehended by civilian authorities. On 24 March 1967, he was awarded a Summary Court-Martial for this absence.

"3. On 21 April 1967, the accused, while in confinement for the Summary Court-Martial of 24 March 1967, signed a statement acknowledging that on or about 15 May 1967 he would be processed and transported to the Western Pacific for duty with the 3rd Marine Division, which was engaged in counter-insurgency operations in the Republic of Vietnam against communist forces,

"4. After being released from confinement on 21 April 1967, Private FLEMING deserted his organization, Headquarters and Service Company, Staging Battalion, Marine Corps Base, Camp Pendleton, California, with the intention of shirking important service, namely duty with the 3rd Marine Division, Western Pacific Ground Forces, Fleet Marine Force, Western Pacific and did remain so absent until 4 May 1967 when Sheriff Frank LANE of Dallas, Pennsylvania, observed the accused walking down a country road near a girl friend's home in the company of a friend who was also absent without leave. Sheriff LANE was aware of the accused's military status because the father of the accused had phoned the sheriff and informed him that his son was AWOL from the Marine Corps. Sheriff LANE took the accused in his patrol car and subsequently turned him over to military authorities.

"5. During March and April, 1967, the Marine Corps had committed in Vietnam the 3rd Marine Amphibious Force, consisting of a Headquarters, a Force Logistics Command, two Divisions and one Air Wing, engaged in counter-insurgency operations against communist insurgents (Viet Cong) and North Vietnamese Army Forces."

It would appear from the above that witnesses who might be able to testify as to the accused's intent to desert and to shirk important service would be located at Dallas, Pennsylvania, a point much nearer Boston than Camp Pendleton. If, in fact, some witnesses might be found among the accused's fellow-Marines, their testimony most probably would have to have been secured by deposition in any event, since the unit was to be sent to Vietnam. Data from the accused's service record, pertinent to this case, undoubtedly was sent to the First Naval District from Camp Pendleton when the case was referred and was available there. In sum, we do not believe that the Government has demonstrated that there was material evidence available at Camp Pendleton that was not available to the First Naval District, Boston. Affirmative good cause, either in the record or in the allied papers, for withdrawing this case is simply not shown. The action of the convening authority in withdrawing this case was without authority. United States v Williams, supra.

We cannot leave this matter without commenting on the statement in the action of the Commandant, First Naval District, that he originally referred this matter to trial only because "the accused, through his counsel, had assured the trial counsel that a guilty plea would be entered." The corollary to this statement would seem to be that absent such assurance the Commandant, First Naval District, would have been unwilling to go to trial. We are reluctant to believe that he intended to convey such an impression or that a policy to that effect is in existence in the First Naval District. Undoubtedly, there are a number of instances where confinees at the U. S. Disciplinary Command, Portsmouth, New Hampshire, are retried for offenses committed in another command. A procedure wherein only guilty pleas are accepted, with the remainder being returned to the original convening authority, would be inimical to public policy. Cf. United States v Cummings, 17 USCMA 376, 38 CMR 174.

We have previously characterized the reference of charges for trial as a judicial act. United States v Williams, supra; United States v Roberts, 7 USCMA 322, 22 CMR 112; United States v Bunting, 4 USCMA 84, 15 CMR 84. In order to preserve the judicial integrity of the court-martial process, it is imperative that the provisions of paragraph 56b, Manual, supra, be strictly construed. We hold, therefore, that since good cause was not shown for withdrawing this case, the subsequent trial at Camp Pendleton was invalid.

Left for consideration is the disposition of this case. Ordinarily we would direct that a rehearing could be ordered. However, since this nineteen-year-old is currently serving his country in Vietnam, the antithesis of

the alleged offense, we do not believe that further proceedings is warranted. Cf. United States v Sheeks, 16 USCMA 430, 37 CMR 50.

The decision of the board of review is reversed. The record of trial is returned to the Judge Advocate General of the Navy. The charges are ordered dismissed.

Chief Judge QUINN concurs.

DARDEN, Judge (dissenting):

I consider the action of the Commandant of the First Naval District in this case as being in good faith, justifiable, and not in derogation of the rights of the accused.

My understanding of the decision in United States v Williams, 11 USCMA 459, 29 CMR 275, the controlling authority in the principal opinion, is that it stands for the proposition that the *belief* a court-martial will adjudge an inadequate sentence is not good cause to warrant withdrawal of charges from a court-martial convened for the trial of those charges. In the case before us, there is not a scintilla of evidence that the withdrawal of charges was a result of any apprehension that the court-martial would adjudge an inadequate sentence. To the contrary, the order withdrawing the case reflects a belief that "the evidence necessary to establish the offense charged is not available locally but is available at the situs of the original trial."

Whether the evidence necessary to establish the offense charged was available in Boston is a controverted question. The principal opinion suggests that the required evidence was more available in the First Naval District than in Camp Pendleton, apparently because the accused was apprehended by a sheriff in Pennsylvania and because a girl friend of the accused resided in that State. The board of review addressed itself to a similar argument in these words:

". . . In what way these two possible witnesses might provide the evidence required to establish the intent of the accused during his brief absence is not readily apparent. Evidence from which the requisite intent could be inferred would include, but not necessarily be limited to, evidence of the employment of the command to which the accused was attached, evidence of the state of the accused's training, evidence of the orders and instructions which had been furnished to the accused regarding future duty assignments and any remarks or acts of the accused that indicated an intent to avoid such future duty. Such evidence is obviously more readily obtainable at the command to which the accused was assigned at the time of the offense. This is good cause and as such is sufficient to support the action of the Commandant, First Naval District, of 9 January 1968."

I believe that the procedures followed in this case are consistent with the direction of this Court in United States v Smith, 16 USCMA 274, 36 CMR 430, and United States v Robbins, 18 USCMA 86, 39 CMR 86. Since I think the board of review had substantial evidence to support its holding, I would not reverse its decision.