**UNITED STATES**

**v.**

**Naeem B. MANN, 077 56 0606, Private (E–1), U.S. Marine Corps.**

**NMCM 90 1079.**

U.S. Navy–Marine Corps Court of Military Review.

Sentence Adjudged 9 Jan. 1990.

Decided 29 April 1991.

Lt Tamara A. Massengale, JAGC, USNR, Appellate Defense Counsel

Maj Laura L. Scudder, USMC, Appellate Government Counsel

Before WILLEVER, C.J., STRICKLAND, Senior Judge, and ORR, J.

ORR, Judge:

Contrary to his pleas, a general court-martial composed of a military judge sitting alone convicted the appellant of one specification of conspiring to steal property valued over $100.00, six specifications of

stealing property from six fellow Marines, and two specifications of housebreaking with the intent to commit larceny in violation, respectively, of Articles 81, 121, and 130, Uniform Code of Military Justice, 10 U.S.C. §§ 881, 921, 930. The appellant was sentenced to confinement for one year, to forfeit $600.00 pay per month for 12 months, and to receive a bad-conduct discharge. The convening authority approved the sentence as adjudged.

These offenses arose from the theft of personal property from two barracks rooms following a break-in during the early morning hours of Sunday, 6 August 1989. The break-in was conducted by the appellant's co-conspirator, Private Hampton. The appellant was not present at the time, but he unsuccessfully tried to obtain a firewatch in the barracks where the break-in was to occur so that he could act as a lookout for Hampton. A third Marine actually assisted Hampton in that capacity and also helped Hampton transport the stolen property in four seabags. Those four bags were ultimately reduced to three by Hampton and the third Marine later that morning and taken to a friend of Hampton who lived in a different barracks. That friend, a female Navy petty officer, thought that the contents of the three seabags belonged to Hampton, who she knew was being discharged and transferred home, and that he needed a place to store some of his things while his other property was packed for shipment. A second female Navy petty officer, who also knew Hampton, became involved the following day when the first petty officer asked her to keep the three seabags because she had more space in her room to keep them.

The appellant asserts the military judge erred in denying a motion to dismiss the charges for improper withdrawal from a special court-martial and rereferral of the identical charges to this general court-martial. The offenses before us were originally referred to a special court-martial by the acting commanding officer of the appellant's unit, Marine Barracks, Subic Bay, on 17 October 1989. The appellant was arraigned at that special court-martial on 25 October 1989. After electing trial by members but before entering pleas, the appellant moved to limit the Government's use of certain out-of-court statements by Private Hampton. These statements were purportedly made to another Marine who was in the brig with Hampton after Hampton had been incarcerated for his part in these offenses.

In responding to the motion, the trial counsel relied upon several theories of admissibility. One was that the statements were made by a co-conspirator under Military Rule of Evidence (M.R.E.) 801(d)(2)(E), while another was that the statements were against the declarant's interest under M.R.E. 804(b)(3). To establish the conspiracy, the trial counsel called virtually every Government witness except Private Hampton, who had not yet been tried and was negotiating for possible immunity in exchange for his testimony against others. When the military judge indicated that he did not think the statements Private Hampton made in the brig were in the course and in furtherance of the conspiracy, the trial counsel called Hampton in the erroneous expectation that he would exercise his right to remain silent and in the mistaken belief that such exercise would render him "unavailable" as required for admissibility of his out-of-court statements under M.R.E. 804(b)(3).[1] During a recess immediately prior to being called, however, Private Hampton told the trial counsel and the appellant's defense counsel that he would testify.

When the Article 39(a) session reconvened, the trial counsel called Private Hampton as a witness. The defense coun-

---

1. The applicable authority is contrary to the trial counsel's theory in calling the alleged co-conspirator. "Absent an extraordinary showing by the Government why the co-actor could not be immunized, his statement should not have ever been *considered* for receipt in evidence against appellant." *United States v. Dill,* 24 M.J. 386, 389 (C.M.A.1987). "[F]airness dictates that where the prosecution seeks to introduce the hearsay statement of an absent witness, claiming him to be unavailable, the witness should be made available if it is within the power of the prosecutorial authority." *United States v. Valente,* 17 M.J. 1087, 1088–89 (A.F.C.M.R.1984).

sel promptly sought to withdraw the accused's motion in limine and to enter pleas. The trial counsel persisted in seeking to call Hampton and obtain his testimony under oath. From the ensuing discussion, it became apparent to the military judge that the trial counsel was contemplating a possible withdrawal of the charges and a rereferral to a general court-martial. Without expressly ruling on the defense counsel's request to withdraw the motion then before the court, the military judge allowed the Government to call Private Hampton and to take his testimony.[2] Why this was permitted at this stage of the proceedings is unclear, but it appears the military judge allowed the hearing to become a medium for aiding the Government in the "discovery" of Private Hampton's testimony before the court was assembled and before the entry of pleas. In our disposition of the assigned error, we do not find it necessary to address the legal propriety of this procedure.

At the conclusion of Private Hampton's testimony at this Article 39(a) session, the trial counsel asked for a continuance for the purpose of consulting with the conven-ing authority. Over the defense counsel's objection, a continuance was granted until 2 November 1989. On 31 October, however, the special court-martial convening authority withdrew the charges he referred to trial on 4 October 1989.[3] Apparently realizing that the charges on which the appellant was arraigned at the 25 October proceedings were referred on 17 October 1989, the special court-martial convening authority issued a second statement on 3 November withdrawing the charges referred on 17 October. In both statements, the convening authority states: "This decision is based on the unforeseen and unexpected decision of the defendant's co-conspirator Private ... Hampton[ ] to offer sworn testimony in court against the defendant."

■ Following an Article 32 pretrial investigation subsequently ordered by the special court-martial convening authority, charges identical to those on which the appellant was arraigned on 25 October were referred to a general court-martial on 20 November 1989 by the officer exercising general court-martial jurisdiction over the

2. This dialogue and the testimony of Private Hampton appear in the record of trial in an unmarked series of pages numbered consecutively 8–71 following a document marked "AE III", which is the trial counsel's 11 December 1989 Answer to Motion to Dismiss. (This Answer is labeled "SPECIAL COURT–MARTIAL" even though the special court-martial proceedings had terminated on 28 October 1989.) The condition of this record, as it exists before us, requires comment. Three documents are identified as AE I, two are marked AE II, two more are marked AE III, another two are marked AE IV, and three are AE V. In addition, the first seven pages of the special court-martial proceedings, including the convening order and an original charge sheet reflecting a 17 October 1989 referral date, are marked as AE IV and appear immediately after the ten prosecution exhibits admitted during the proceedings of the general court-martial. Those seven pages of the special court-martial proceedings are followed by the defense exhibits from the general court-martial. These defense exhibits are, in turn, followed by the first (as it appears sequentially in the record) "AE I," which is the transcript of the opening Article 39(a) session of the general court-martial, held on 12 December 1989. During that first session, the appellant was advised of his counsel rights, the court was assembled, the appellant was arraigned, and the defense motion for dismissal was initially considered. [Why such essential matters would be attached to the record as an appellate exhibit is not clear. In our disposition of whether the charges were properly withdrawn and rereferred, we do not reach whether this record constitutes a complete record of trial under Rule for Courts–Martial 1103(b)(2)(A).] As the record was submitted to this Court, the first three pages are a completed copy of DD Form 490, "RECORD OF TRIAL", followed by the charge sheet. The fourth page of the record contains the reporter's note of the place, time, and date (9 January 1990) that the court-martial met and a copy of the general court-martial convening order. The first page of actual dialogue (page 5) begins with this anomalous statement from the military judge: "Now, at the prior Article 39(a) session in this case on 12 December 1989...." As we have noted above, the record of that 12 December 1989 session is the first "AE I."

3. In the military judge's essential findings on two defense motions, the military judge refers to the convening of a special court-martial on 4 October 1989, followed by a withdrawal of charges and the referral of amended charges on 17 October 1989. Appellate Exhibits V and VII. There is nothing in the record now before us concerning any proceedings on 4 October 1989.

appellant. At the first session of this general court-martial, the defense counsel moved for a dismissal of the charges for improper withdrawal and referral. This motion was denied, and in support of his ruling, the military judge made essential findings.[4] In paragraph 7 of those findings, the military judge correctly states that Rule for Courts–Martial (R.C.M.) 604(b) permits the rereferral of charges withdrawn from a prior court-martial unless the withdrawal was for an improper reason. In the following paragraph, the military judge found that the Government bears the burden of showing by a preponderance of the evidence that the withdrawal was not for an improper reason. In paragraph 10, however, the military judge states: "This case clearly involves extraordinary events, and the fact of prior arraignment by itself should not be a bar to rereferral *absent some showing of substantial prejudice to the accused's ability to mount his defense.*" [Emphasis added.] What the military judge found to be clearly extraordinary is not identified, although he states that, based on the special court-martial convening authority's explanation that he was surprised by Private Hampton's willingness to testify, that officer:

> could have concluded, based on the advice of the trial counsel, that the availability of this evidence warranted further examination at an Artical [sic] 32 investigation. The reasonableness of this conclusion is supported by the fact that the seriousness of the charges on their face would normally have resulted in referral

to an Article 32 investigation, absent problems in the quantum or extent of proof available to the Government. Appellate Exhibit VII, para. 12. Noting that the defense counsel had argued that no new evidence was revealed in Private Hampton's testimony, the military judge was not persuaded even if he accepted that conclusion.[5] Instead, the military judge found that the Government was genuinely surprised, that the trial counsel properly consulted with the convening authority, and that the convening authority took action for proper reasons set forth in his affidavit. Lastly, the military judge stated that even if he was persuaded that the sole Government motive in withdrawing the charges "was a belated apperception of the seriousness of the offenses charged ...," the Government withdrawal was "proper, under circumstances where jeopardy had not attached, pleas had not been entered, the court had not been assembled, and the defense could articulate no specific and substantial prejudice to the accused's defense on the merits." Appellate Exhibit VII, para. 14.

In his 11 December 1989 affidavit, the special court-martial convening authority stated that he:

> concluded from the evidence available to the government prior to Pvt Hampton's decision to testify that a special court-martial was appropriate because Pvt Mann's involvement in the case appeared to be limited to a conversation with Pvt Hampton to act as a lookout, an unsuc-

---

4. A signed version of these findings is attached to the record of trial as AE VII. An unsigned duplicate is attached as the third AE V.

5. In our disposition of this case, it is not necessary for us to address the factual question whether Private Hampton's testimony actually produced new evidence of the appellant's complicity in these offenses. We note, however, two things. First, it is appropriate for the military judge to examine the factual accuracy of the convening authority's reasons for withdrawing referred charges as part of the determination whether the withdrawal was for a proper reason. *United States v. Fleming,* 18 U.S.C.M.A. 524, 40 C.M.R. 236 (1969). Second, we have examined Hampton's testimony and the trial counsel's account of his discussions with the convening authority about Hampton's testimo-

ny. A number of the factors the trial counsel identified are clearly speculative and would not have resulted in admissible evidence. Several other factors were simply theorizing that the appellant may have committed other offenses that were never charged. The remaining five or six factors that could be considered admissible evidence of the existing offenses either repeat information already available to the Government through other witnesses, are contradicted by other Government witnesses (who lacked the possible bias Hampton may have had against the appellant because Hampton believed the appellant was the person who initially implicated him), or actually support the contrary conclusion that the appellant had only a limited role in the commission of the offenses.

cessful attempt by Pvt Mann to secure a firewatch, delivery of an address to ... [the second female Navy petty officer who was storing the three seabags], and the taking of various items for delivery to Pvt Hampton. He just did not seem as culpable as Pvt Hampton and ... [another alleged coactor].

After listening to ... [the trial counsel's] delineation of Pvt Mann's involvement as related by Pvt Hampton, I was convinced that Pvt Mann's involvement in the larceny was significantly more extensive that I originally believed. Based on the information provided by ... [the trial counsel] and his legal opinion as to the effect of Pvt Hampton's testimony I decided it was appropriate to withdraw the charges and forward them to an Article 32 hearing....

Appellate Exhibit V.[6]

From this affidavit the only reason for withdrawing the charges was the convening authority's belief that the appellant's involvement in the offenses charged at the special court-martial "was significantly more extensive" than what the convening authority initially thought.[7] This rationale obviously differs from the explanation offered in his 25 October and 3 November statements that his withdrawal was based on Private Hampton's decision to testify against the appellant.

 In our analysis of the applicable authority, we find that the military judge erred in denying the appellant's motion to dismiss. We hold that neither a delayed appreciation of the seriousness of the offenses nor the discovery of additional evidence of the accused's guilt is a proper reason for withdrawal after arraignment. We also find that the military judge erred in limiting the question of prejudice to the appellant's ability to mount his defense. If the Government withdraws charges after arraignment and rerefers the same charges to a court-martial where either a conviction alone would be more onerous or greater punishment may be imposed, the prejudice already exists, and the Government must show that the withdrawal was for a proper reason. We need not and do not address the situation where the Government withdraws charges after arraignment and rerefers the same charges or the same charges with additional offenses to the same type of court-martial with no authorization to impose any greater punishment.

R.C.M. 604(a) provides: "The convening authority or a superior competent authority may for any reason cause any charges or specifications to be withdrawn from a court-martial at any time before findings are announced." In the discussion following this paragraph of the Rule is the caveat: "Charges should not be withdrawn from a court-martial arbitrarily or unfairly to an accused." The following paragraph of the Rule reinforces this caveat:

Charges which have been withdrawn from a court-martial may be referred to another court-martial unless the withdrawal was for an improper reason. Charges withdrawn after the introduction of evidence on the general issue of guilt may be referred to another court-martial only if the withdrawal was necessitated by urgent and unforeseen military necessity.

---

6. Sequentially, this is the first AE V.

7. In an Article 39(a) session on 9 January 1990, the trial counsel was called as a witness concerning his discussion with the special court-martial convening authority about the decision to withdraw the charges from the special court-martial. In his testimony, the trial counsel indicated that he was not the judge advocate initially assigned to this case, but he was assigned prosecutorial responsibilities after he reported to Subic Bay in late September 1989, after the initial charge sheet was prepared. Although the charges on which the appellant was arraigned at the special court-martial were not referred until 17 October 1989, the trial counsel mentioned in his testimony that the special court-martial convening authority and the convening authority's executive officer and legal officer had each expressed dissatisfaction with what the trial counsel characterized as "inadequate prosecution of cases" and that these officers "were under the impression that the Government counsels here were more concerned with getting Pretrial Agreements and pushing through the cases than they were in seeing that the Government got as fair a deal in the trial of these cases as the defense was given." Record at 8.

R.C.M. 604(b). The discussion following 604(b) states:

> Whether the reason for a withdrawal is proper, for purposes of the propriety of later referral, depends in part on the stage in the proceedings at which the withdrawal takes place. Before arraignment, there are many reasons for a withdrawal which will not preclude another referral. These include ... reconsideration by the convening authority or by a superior competent authority of the seriousness of the offenses.... Charges withdrawn after arraignment may be referred to another court-martial under some circumstances. For example, it is permissible to refer charges which were withdrawn pursuant to a pretrial agreement if the accused fails to fulfill the terms of the agreement....

Discussion, R.C.M. 604(b), Manual for Courts–Martial, United States, 1984, (MCM). Although the examples of proper reasons for either pre-arraignment or post-arraignment withdrawal were not intended to be exclusive, neither listing mentions the discovery of additional evidence as a proper reason for withdrawal and subsequent referral. In fact, it is difficult to imagine any circumstance where the simple discovery of additional evidence on the same offenses, by itself, would actually be the reason for withdrawing and rereferring identical charges and specifications. Such a quantitative discovery might, however, contribute to a perception that the accused's role in those offenses was greater than originally believed and prompt reconsideration of the appropriate forum. This could be a proper basis for a later referral *if the withdrawal occurs before arraignment.* That is not the situation before us, however, since the reconsideration of the seriousness of the offenses occurred *after* arraignment.

Permitting rereferral unless the withdrawal is for an improper reason is a long-standing concept. Analysis, R.C.M. 604(b), MCM, App. 21–29. "This provision ... is not new to military law, and it reflects limitations on the prosecutorial power of the convening authority." *Vanover v. Clark,* 27 M.J. 345, 347 (C.M.A.1988). We have not, however, found many post-arraignment cases addressing withdrawal and rereferral. In the only post-arraignment case involving withdrawal from a special court-martial and rereferral to a general court-martial, the Court of Military Appeals did not address the question of improper withdrawal. *United States v. Wells,* 9 U.S.C.M.A. 509, 26 C.M.R. 289 (1958). In *Wells,* new charges were included in the rereferral,[8] and the Court only addressed the issue of former jeopardy, holding that jeopardy had not attached to prevent the trial of the original offenses at the subsequent general court-martial. 9 U.S.C.M.A. at 512; 26 C.M.R. at 292. We do not find *Wells* particularly helpful in deciding the present issue.

The withdrawal and rereferral of identical charges has been upheld by the Courts of Military Review in two post-arraignment cases. This Court held that a withdrawal was for a proper reason even though a new military judge and new court members were appointed when the reporter's notes of the only session of the court, an Article 39(a) session when the accused was arraigned, were lost. *United States v. Hill,* 45 C.M.R. 904 (N.C.M.R.1972). The Air Force Court has held that, when the members of a general court-martial were reduced below the jurisdictional minimum by challenges, the convening authority could properly withdraw the charges and refer the same charges to another court where the judge and counsel were the same and the members included those remaining from the original panel.[9] *United States v.*

---

8. The Court has subsequently held that referral of additional charges to a court-martial when the accused has already been arraigned is improper. *United States v. Davis,* 11 U.S.C.M.A. 407, 29 C.M.R. 223 (1960). We have held that such an impropriety may be waived. *United States v. Lee,* 14 M.J. 983 (N.M.C.M.R.1982).

9. The appellant before us requested a trial by members before he was arraigned at the special court-martial. Although he elected trial by the military judge alone at the subsequent general court-martial, none of the five members appointed to the special court-martial was appointed to the general court-martial.

*Smiley*, 17 M.J. 790 (A.F.C.M.R.1983), *petition denied*, 18 M.J. 127 (C.M.A.1984).

In another post-arraignment case, the Court of Military Appeals ordered a retrial even though the rereferral was to the same type of forum when the Court found that the convening authority withdrew the original charges because he believed the sentences of the initial court, with different members, were too lenient. *United States v. Whitley*, 5 U.S.C.M.A. 786; 19 C.M.R. 82 (1955). A complete rehearing, vice merely a rehearing of the sentence, was ordered in *Whitley* because the case was contested and the Court was uncertain how the convening authority's interference might have influenced the subsequent trial. 5 U.S.C.M.A. at 792; 19 C.M.R. at 88. *Cf. United States v. Williams*, 11 U.S.C.M.A. 459, 29 C.M.R. 275 (1960) (pre-arraignment withdrawal held improper because the convening authority thought the members of the initial court were too lenient in sentencing, but since the accused plead guilty only a sentence rehearing was ordered).

In *United States v. Fleming*, 18 U.S.C.M.A. 524, 40 C.M.R. 236 (1969), the Court ordered the dismissal of charges that were withdrawn from a general court-martial after the accused's guilty pleas were not accepted. The convening authority ostensibly withdrew the charges after determining that evidence was not available locally, but was available at a different site. The Court found, however, that the second general court-martial was convened at a location that was even further removed from the place where the Government's potential witnesses were located than the first site. The Court did "not believe that the Government has demonstrated that there was material evidence available at Camp Pendleton [the site of the second court-martial] that was not available to the First Naval District, Boston [where the first court-martial was convened]." 18 U.S.C.M.A. at 529; 40 C.M.R. at 241.

These cases and the M.C.M. discussion of R.C.M. 604 illustrate the concept that, while a convening authority may withdraw a charge at any time, his discretion concerning the disposition of that charge after withdrawal becomes more and more restricted the closer the original forum gets to accepting evidence on the issue of guilt or innocence. The scope of what constitutes a proper reason for withdrawal permitting rereferral narrows as that charge progresses along the judicial process in the original forum before the convening authority exercises his prerogative to withdraw. The reason for this constriction is to avoid the possibility or the appearance that the convening authority has manipulated the judicial process to obtain some preconceived result.

The Court of Military Appeals expressed this rationale when it enjoined an Article 32 investigation of charges that had been withdrawn from a special court-martial and stated:

> The appropriate basis for directing an investigation under Article 32 is the seriousness of the offenses.... No new information regarding the seriousness of the charges against the petitioner was brought to the attention of ... [the convening authority] between ... the date of referral to the special court-martial[ ] and ... the date when the charges were withdrawn.... A forum for determining the petitioner's responsibility had already been selected.

*Petty v. Moriarty*, 20 U.S.C.M.A. 438, 441, 43 C.M.R. 278, 281 (1971) (citation and emphasis omitted). Although Petty had not been arraigned, the military judge had acted in the case before the convening authority withdrew the charges. That withdrawal and the order to hold an Article 32 investigation occurred after the defense counsel had requested four witnesses who were not in the local area, but who the trial counsel agreed were material to the defense case. The Court considered the convening authority's removal of the case from the special court-martial to be "an illegal interference with the exercise of ... [the military judge's] judicial function." *Id.* While we do not have the appearance of any retaliation due to legitimate defense activities in the case before us, the appellant's trial had passed a milestone—the appellant's arraignment. Once an accused has been formally advised in open court of the charges

against him, the forum for determining his responsibility has been selected, and the fact that the Government subsequently discovers additional evidence of the accused's guilt of those offenses does not justify withdrawal and rereferral of those same charges to another forum where a more severe penalty may be imposed.

As to the more severe penalty, we also find the military judge erred in limiting his test for possible prejudice to "the accused's ability to mount his defense." Appellate Exhibit VII. para. 10. The prejudice to the accused from a referral of the same charges to a forum that can assess a more onerous punishment should be readily apparent. The prosecution would gain exactly what it sought by the improper withdrawal if the test for prejudice ignored the greater punishment that the appellant might have to endure.

> Since ... the charge was improperly withdrawn from the special court-martial and rereferred to a general court-martial, ... [the appellant] is entitled to relief.
>
> ... [T]he change in forum from special court-martial to general court-martial in itself prejudiced appellant. In addition to a possibly greater stigma resulting from a conviction by general court-martial, a punitive discharge adjudged by a general court-martial may have adverse legal effects which do not attach to a punitive discharge imposed by a special court-martial. *See* 38 U.S.C. [§] 3103(a)....

*United States v. Penister*, 25 M.J. 148, 153 (C.M.A.1987). Both Penister and the appellant were sentenced to confinement for 12 months, and both served the entire sentence to confinement before review was completed by this Court.[10] The relief provided by this Court in *Penister* and approved by the Court of Military Appeals was setting aside the findings of guilty and the sentence and ordering the record of trial returned to the convening authority to either direct special court-martial proceedings or dismiss the charge and specification. 25 M.J. at 149.

Since we have concluded that the military judge erred in denying the motion to dismiss for improper withdrawal and we find that the appellant suffered material prejudice to his substantial rights by this error, remedial action is required. Accordingly, the findings of guilty and the sentence are set aside. The record of trial is returned to the Judge Advocate General for remand to the same or a different convening authority, who may order a trial by special court-martial or dismiss the charges and specifications.

Chief Judge WILLEVER and Senior Judge STRICKLAND concur.

---

**10.** The defense counsel in the case before us asked for and was given a continuance following the first Article 39(a) session of the general court-martial for the purpose of seeking an extraordinary writ to overrule the trial judge's ruling on the defense counsel's motion to dismiss the charges for improper withdrawal. The general court-martial reconvened almost a month later, but the extraordinary writ is never mentioned.