# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
BURTON, HAGLER, and SCHASBERGER
Appellate Military Judges

**UNITED STATES, Appellee**
v.
**Sergeant MALIK J. SHAKUR**
**United States Army, Appellant**

ARMY 20170127

Headquarters, U.S. Army Africa/Southern European Task Force
S. Charles Neill, Military Judge
Colonel Louis P. Yob, Staff Judge Advocate (pretrial & recommendation)
Colonel Karen H. Carlisle, Staff Judge Advocate (addendum)

For Appellant:  Lieutenant Colonel Tiffany M. Chapman, JA; Captain Joshua B. Fix, JA; Captain Augustus Turner, JA (on brief); Lieutenant Colonel Tiffany M. Chapman, JA; Major Todd W. Simpson, JA; Captain Augustus Turner, JA (on reply brief).

For Appellee:  Colonel Tania M. Martin, JA; Major Cormac M. Smith, JA; Captain Cassandra M. Resposo, JA (on brief).


6 July 2018

-----------------------------------
OPINION OF THE COURT
-----------------------------------

SCHASBERGER, Judge:

At issue in this appeal is whether the convening authority acted improperly when he withdrew charges from a court-martial convened in Italy and re-referred the charges to a court-martial in Fort Drum, New York.[1]  We find the convening authority did not improperly interfere with the court-martial and was within his

---

[1] As a second assignment of error, appellant claims he was prejudiced when the addendum to the staff judge advocate's recommendation failed to address the two legal errors cited in his post-trial matters.  Neither issue raised by appellant in his post-trial matters, however, qualifies as legal error.  The first issue regarding the withdrawal and re-referral of charges is analyzed fully in this opinion and we conclude there was no legal error.  The second issue regarding appellant's post-trial confinement, while a potential basis for clemency from the convening authority, is also not a legal error.

authority when he withdrew the charges and then re-referred the case in a different location.

A military judge sitting as a general court-martial convicted appellant, contrary to his pleas, of one specification of rape and, pursuant to his pleas, of two specifications of wearing unauthorized decorations, badges and awards, in violation of Articles 120 and 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 920, 934 (2012).[2] He sentenced appellant to a dishonorable discharge, confinement for ten years, and a reduction to the grade of E-1. The convening authority approved the adjudged sentence.

## BACKGROUND

In early July 2015, KM was a specialist in the Army and stationed in Italy. On 3 July 2015, KM, her boyfriend and several co-workers went to a bar to bid farewell to some of their friends. Appellant, also stationed at the same location in Italy, went to the same bar that night. He was not a member of KM's group but knew some of the other soldiers. While at the bar, KM got into an argument with her boyfriend. She left the bar and went to sit in the car to wait for her designated driver to take her home. Her boyfriend got in the car and they continued to argue. Appellant came to the car and asked if everything was ok. They both said everything was fine. Appellant went back to the bar and found his driver, Sergeant (SGT) JS, and asked for the car keys. Appellant said he needed the keys to take KM back to the barracks. After making sure appellant was not intoxicated, SGT JS gave appellant the keys.

Appellant offered to drive KM back to post. KM knew appellant was a noncommissioned officer and trusted him; she accepted the offer. Instead of going to post, appellant drove to a deserted area and parked the car. He began talking with KM, then he began kissing KM. When KM told him no, he shoved her into the back seat and raped her. The assault ended when SGT JS called looking for his car. Appellant kicked KM out of the car and went back to the bar. KM texted her boyfriend and told him she "got t[a]ken advantage of" and was scared. Meanwhile, appellant got his own car, came back and brought KM to the barracks.

Based on the text, KM's boyfriend came to her room along with another soldier. She was crying and told them she had been assaulted. They called one of her supervisors, who brought her to the hospital and reported the assault to the

---

[2] The military judge acquitted appellant of attempted sexual assault, adultery, making a false official statement, and a second specification of rape. The other rape allegation arose from an incident in 2011, at Fort Leonard Wood, Missouri, with a different woman.

Italian police. KM was examined by Italian doctors, who conducted a sexual assault forensic exam.

The next day, appellant became aware of KM's allegation. After learning this, appellant reported he had been sexually assaulted. Appellant claimed he had no memories of what happened but thought he had been sexually assaulted. As part of his sexual assault claim, he also completed a sexual assault forensic exam. As a result, deoxyribonucleic acid (DNA) from KM was found on appellant.

*A. The First Trial*

The government preferred charges against appellant on 2 November 2015; additional charges were preferred on 16 December 2015. The convening authority in Italy referred the charges to trial on 2 February 2016. Appellant was arraigned on 23 February 2016. Appellant secured civilian counsel who were not available until December 2016. The military judge docketed the case for the week of 5 December 2016.

Between arraignment and trial, KM finished her term of service with the Army and left the service. A few weeks before trial, KM informed the trial counsel she would participate in the trial, but was unwilling to return to Italy. The government did not have the power to compel a civilian to come from the United States to participate in a court-martial in Italy. *See* Rule for Courts-Martial [R.C.M.] 703(e)(2)(A) discussion.

On 18 November 2016, the government filed for a continuance and a change of venue. The basis for the continuance was the government's need for time to accommodate the contracting of late-notice defense experts. The basis of the change in venue was the inability to compel KM to come to Italy. The defense filed a brief in opposition, arguing the change in venue would prejudice appellant. The military judge scheduled argument on the motion for 1 December 2016. On 24 November 2016, prior to argument or a ruling by the military judge, the government withdrew its motion and informed the court and defense that the convening authority would be withdrawing the charges. On 2 December 2016, the convening authority withdrew the charges and then re-referred the charges to a court-martial convened at Fort Drum, New York.

*B. The Second Trial*

A new military judge was detailed to the case and docketed the trial for the last week of February through the beginning of March 2017. The convening authority ordered the deposition of the two Italian doctors who conducted the forensic examination of KM the morning after the assault, documented her injuries, and took DNA samples from her. The doctors could not get time off of work during the time of the trial and expressed reluctance to travel to the United States.

Although the government could work through the Italian authorities to subpoena Italian witnesses for a trial in Italy, it could not compel Italian witnesses to travel to the United States. Both doctors were exclusively on the government's witness list. Appellant was represented at the deposition by his military defense counsel.

On 27 February 2017, appellant was arraigned at Fort Drum and elected to be tried by military judge alone. Appellant pleaded guilty to the additional charges involving the unauthorized wearing of decorations, badges and awards, and not guilty to the remaining charges, to include rape. Prior to entry of pleas, appellant did not raise any motions with regard to the change of venue, the length of time it took to bring the case to trial, or the failure to produce any witness necessary for his defense.[3]

At trial, the government moved to admit the depositions of the Italian doctors. The defense objected. After a hearing on the issue, the military judge refused to admit the depositions into evidence, finding that the government did not make reasonable, good faith efforts to secure the presence of the doctors sufficient to establish that the witnesses were unavailable for purposes of Military Rule of Evidence [Mil. R. Evid.] 804(a)(5).

## LAW AND DISCUSSION

For the first time, on appeal, appellant alleges the convening authority improperly withdrew and re-referred the charges to court-martial. Appellant's assignment of error joins two legal concepts: first, the issue of improper withdrawal and re-referral of charges; and second, unlawful command influence in the action by the convening authority. We review both issues de novo. *United States v. Underwood*, 47 M.J. 805, 809 (A.F. Ct. Crim. App. 1997) (citing *United States v. Koke*, 34 M.J. 313 (C.M.A. 1992)); *United States v. Chikaka*, 76 M.J. 310, 313 (C.A.A.F. 2017).

### A. Waiver of Improper Referral

Objections based on defects in referral (other than jurisdictional defects) must be raised before a plea is entered. R.C.M. 905(b)(1). At trial, however, appellant did not raise the issue of improper referral of charges.[4] The failure to raise such an

---

[3] Before the entry of pleas, the defense made a Military Rule of Evidence [Mil. R. Evid.] 412 motion and the government made a Mil. R. Evid. 514 motion. Both motions were fully litigated.

[4] Given the procedural history of this case, it is clear that the defense was aware of the issue at the time of trial. In November 2016, the same defense team (which was

(continued . . .)

4

objection means the objection is waived. R.C.M. 905(e); *United States v. Corcoran*, 40 M.J. 478, 484 (C.M.A 1994) ("Nonjurisdictional defects in the preferral, forwarding, and referral process are waived if not raised prior to entry of pleas."). An improper referral is not a jurisdictional defect. *United States v. Blaylock,* 15 M.J. 190, 192-93 (C.M.A. 1983). Therefore, appellant waived the issue of improper referral when he failed to raise it at trial.

### B. Waiver of Accusatory UCI

Appellant argues the convening authority's withdrawal and re-referral itself was an unlawful interference in a court-martial and, therefore, constituted unlawful command influence (UCI). This argument fails for two reasons. First, the claim of UCI was waived by not raising it at trial. Second, the record does not contain facts, which if true, constitute UCI.

The general rule is the defense does not waive UCI by failing to raise it at trial. *Id.* at 193. This rule, however, is not absolute. The United States Court of Appeals for the Armed Forces (CAAF) has distinguished UCI in the accusative phase (e.g., involving the preferral, forwarding, and referral of charges), from UCI in the adjudicative phase (e.g., interference with witnesses, judges, members, and counsel). *United States v. Weasler*, 43 M.J. 15, 17-18 (C.A.A.F. 1995). In making this distinction, the CAAF concluded claims of UCI during the accusative phase can be waived. *Id.* at 19 ("Where there is coercion in the preferral process, 'the charges are treated as unsigned and unsworn,' but the 'failure to object' constitutes waiver of the issue."). The court has also found waiver of defects in the forwarding process if not challenged at trial. *Id.* (citing *United States v. Hamilton*, 41 M.J. 32, 36 (C.M.A. 1994)).[5]

Having concluded referral is part of the accusatorial stage, we examine appellant's knowledge of the facts at the time and whether appellant was in some way precluded from raising UCI at trial. "If command influence is known, or reasonably could be known in either the accusatorial stage or the selection process, failure to raise the issue constitutes waiver." *See United States v. Upshaw*, 49 M.J. 111, 114 (C.A.A.F. 1998) (Crawford, J., concurring) (citing *Weasler*, 43 M.J. at 17).

---

(. . . continued)
comprised of two civilian attorneys and a military defense counsel) submitted a motion objecting to a change of venue and continuance. In the motion they raised the issue of prejudice to appellant, violation of the constitutional right to a speedy trial, and cost to appellant.

[5] However, such waiver would not apply if the failure to raise the issue was itself the result of unlawful command influence. *Hamilton*, 41 M.J. at 37.

Where it is clear the defense counsel were aware of all of the underlying facts regarding the referral at the time of trial, we conclude appellant waived the issue of UCI with respect to the referral of the charges. The appellate record clearly shows that at the time of trial appellant's defense team was aware of the reasons for the withdrawal and re-referral, and there is no evidence that appellant was precluded from raising the issue at the second trial.

Here, the argument for waiver is compelling for one key additional reason. That is the defense response to the government's motion for change of venue in the first trial.[6] In that response, defense counsel specifically raised the possibility of a withdrawal and re-referral as an alternative to a change of venue. Thus, the defense invited the very course of action they now label as UCI on appeal. The government then did exactly as defense suggested by dismissing the charges and re-referring them to a different court-martial.

### C. Propriety of the Withdrawal and Re-referral

Turning to the merits of the issue, there was no UCI in the CA's withdrawal and re-referral of this case. We reject appellant's attempt to recharacterize another error as UCI to circumvent waiver of that issue at trial. The record must contain evidence of UCI.[7] The only alleged interference by the convening authority was his decision to withdraw the charges and refer them to a trial in a separate location. We therefore look to see if the convening authority's action was an abuse of his power.

Under our procedural rules, a convening authority is vested with virtually unfettered power to withdraw charges. Specifically, "[t]he convening authority . . . may for any reason cause any charges or specifications to be withdrawn from a court-martial at any time before findings are announced." R.C.M. 604(a). While the power to withdraw is unfettered, the ability to re-refer those charges is more limited. "Charges which have been withdrawn from a court-martial may be referred to another court-martial unless the withdrawal was for an improper reason." R.C.M. 604(b).

"A proper reason for withdrawal is 'a legitimate command reason which does not unfairly prejudice an accused.'" *United States v. Leahr*, 73 M.J. 364, 369 (C.A.A.F. 2014) (quoting *United States v. Underwood*, 50 M.J. 271, 276 (C.A.A.F.

---

[6] Though the record of the first trial is not before this court, we granted appellant's motion to attach this response motion as part of his submission on appeal.

[7] To prevail on a theory of UCI an appellant must "(1) show facts which, if true, constitute unlawful command influence; (2) show that the proceedings were unfair; and (3) show that unlawful command influence was the cause of the unfairness." *United States v. Biagase*, 50 M.J. 143, 150 (C.A.A.F. 1999) (citing *United States v. Stombaugh*, 40 M.J. 208, 213 (C.M.A. 1994)).

1999)). We have ample precedents for both proper[8] and improper purposes.[9] Here, the question is first, whether the convening authority's withdrawal and re-referral of charges to ensure the availability of one of the named victims was a proper purpose, and second, whether there was unfair prejudice to appellant.

The CAAF has answered the first question in the affirmative. In *Underwood*, the victim was unable to make the docketed dates of trial. One week before trial, the government asked for a continuance, which was denied. The government asked for reconsideration, the military judge again denied the request. The convening authority then withdrew the charges and dismissed them. After re-preferral and a new investigation, the convening authority re-referred the charges to trial. At trial and on appeal, the defense challenged the jurisdiction of the court-martial and the propriety of the convening authority's action. The CAAF concluded that a withdrawal to accommodate the victim's schedule was a legitimate command objective and a proper purpose under R.C.M. 604(b). *Underwood*, 50 M.J. at 275-76.

We are not persuaded by appellant's argument that *Underwood* applies only to a continuance and not a change in venue. The purpose of accommodating the victim's schedule was to allow the government to produce a necessary witness. In *Underwood* this was accomplished by a continuance; in this case the government did not have the power to compel travel to Italy so the change in venue was the method they chose to produce the witness.

As to the second question, we find appellant was not unfairly prejudiced by the withdrawal and re-referral of charges. Appellant argues actual prejudice because the government deprived appellant of the right to litigate the change of venue motion in the first trial. Appellant cites no authority for the "right" to litigate this motion, and there is no reason to presume he would have been successful. More importantly, appellant was not deprived of the ability to litigate the motion at Fort Drum. Appellant did not challenge the convening authority's decision to refer the charges

---

[8] *See Koke*, 34 M.J. at 315 (withdrawing and re-referring charges for "judicial economy by trying all known charges in a single trial"); *Blaylock*, 15 M.J. at 195 (withdrawing and re-referring charges from a court-martial that was not empowered to adjudge a punitive discharge to a court-martial that was empowered to adjudge a punitive discharge).

[9] *See Vanover v. Clark*, 27 M.J. 345, 347-48 (C.M.A. 1988)(withdrawal and re-referral to avoid an unfavorable ruling by the military judge); *United States v. Williams*, 11 U.S.C.M.A. 459, 29 C.M.R. 275 (1960) (re-referral of a case away from a panel that is perceived to be too lenient); *Petty v. Convening Authority*, 20 U.S.C.M.A. 438, 43 C.M.R. 278 (1971) (re-referral in retaliation for defense requested witnesses); *United States v. Fleming*, 18 U.S.C.M.A. 524, 40 C.M.R. 236 (1960) (re-referral to change venue to avoid witness expenses).

to the second trial at that time, so we fail to see how the failure to litigate the motion is attributable to the government.[10]

Appellant next argues unfair prejudice because the government would not have been able to prove its case absent the victim's testimony so he would have been acquitted. As in *Underwood*, we reject the notion that appellant had a right to a "trial without the prosecution witness." *Id.* at 276.

Appellant also argues that not being at the situs of the crime made it harder on his defense team. We find this argument unsupported by the evidence and unpersuasive. During the nine months between the original arraignment and withdrawal, the defense team had ample time to go to Italy and visit any and all local sites. Appellant did not raise any issue regarding a lack of availability of witnesses, and benefitted by the government being precluded from introducing the testimony of the Italian doctors. Finally, appellant argues he was prejudiced because the trial was convened at a location where his attorney had made a previous ethical complaint against the local Special Victim Prosecutor, a counsel who did not participate in appellant's trial. Appellant has failed to show the previous ethical complaint or the presence of the Special Victim Prosecutor at Fort Drum had any impact on appellant's trial.

## CONCLUSION

On consideration of the entire record,[11] the findings of guilty and the sentence are AFFIRMED.

---

[10] One of appellant's civilian defense counsel submitted an affidavit stating she did not know she could challenge the withdrawal. We do not find this argument persuasive, particularly when the defense team suggested withdrawal and re-referral as an appropriate remedy. Moreover, the defense team was comprised of three experienced counsel, including one who remarked that this case would be the final court-martial in his fifty-year career in the law.

[11] We also considered the matters personally raised by appellant pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982), but conclude they lack merit. Appellant argues his conviction for rape is legally and factually insufficient. In addition, appellant argues his counsel were ineffective because they failed to object to the change of venue to Fort Drum and failed to assert a violation of his right to a speedy trial. As to the issue of factual and legal sufficiency, we find there was sufficient evidence that a rational trier of fact could have found the essential elements of rape, and we are convinced of appellant's guilt beyond a reasonable

(continued . . .)

Senior Judge BURTON and Judge HAGLER concur.



FOR THE COURT:

JOHN P. TAITT
Chief Deputy Clerk of Court

---

(. . . continued)
doubt.  As to the claim of ineffective assistance of counsel, for the reasons explained in our opinion, we find the change in location of the trial was not improper.  We also find appellant's allegation of a speedy trial violation, had it been raised by counsel, would not have been successful.